767 F.2d 922
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
KENNETH M. ZOELLER, DEFENDANT-APPELLANT.
 NO. 84-5847
 United States Court of Appeals, Sixth Circuit.
 6/25/85
 
 W.D.Ky.
 AFFIRMED
 On Appeal from the United States District Court for the Western District of Kentucky
 Before: MERRITT and KENNEDY, Circuit Judges; and PHILLIPS, Senior Circuit Judge.
 KENNEDY, Circuit Judge.
 
 
 1
 Zoeller appeals his conviction for conspiracy to distribute cocaine, 21 U.S.C. Sec. 846(a)(1), possession with intent to distribute cocaine, 21 U.S.C. Sec. 841, and use of a firearm to commit a felony, 18 U.S.C. Sec. 924(c)(1). He was indicted with two co-defendants, William Fields and James Keith. Fields entered a guilty plea prior to trial. Keith was tried with Zoeller and acquitted on all counts. Appellant contends that the District Court erred in denying his motion to dismiss the indictment pursuant to the Speedy Trial Act, 18 U.S.C. Sec. 3161; and that, alternatively, he should be granted a new trial because the District Court erroneously excluded evidence of a prior inconsistent statement of the government's key witness.
 
 I.
 
 2
 On or about August 16, 1983, Michael Lynch, a Drug Enforcement Agency (DEA) informant, purportedly seeking a supplier of cocaine, met Fields. Lynch testified as follows: at their initial contact, Fields showed Lynch four ounces of cocaine wrapped in a towel and told Lynch that he could supply Lynch with all the cocaine Lynch needed; a meeting was then arranged, at which Fields introduced Lynch to Zoeller, and at which Zoeller agreed to front Lynch one ounce of cocaine and assured Lynch that he had an unlimited supply of cocaine; the next day, Fields delivered the ounce of cocaine to Lynch at Lynch's house, and while Fields was there, a man named James Smith arrived and purchased half an ounce of cocaine from Fields with a personal check made out to cash, Lynch assuring Fields that as far he knew Smith's check would be good. At some point Fields gave or negotiated the check to Zoeller, to whom the check was twice returned for insufficient funds.
 
 
 3
 DEA Agent James Malone then instructed Lynch to set up another meeting with Zoeller and Fields, for the purpose of attempting to discover their source of supply. On August 23, Lynch and Malone met Zoeller and Fields at a motel lounge. Malone was introduced as Lynch's brother-in-law. Malone testified about that meeting as follows: he complained of the quality of the ounce of cocaine supplied to Lynch; Zoeller stated that all of the cocaine he sold was of superb quality and that he didn't know why the cocaine supplied to Lynch was not; Malone agreed to pay the $2200 owed by Lynch; Fields brought up the fact that Smith's check had bounced, and stated he had access to any quantity of cocaine required by Malone; Zoeller and Fields then left the lounge, indicating that they would return shortly; after they returned, Fields asked if Malone was going to pay the $2200, to which Malone replied that he would but that Fields and Zoeller would have to come out to his car; the four of them then started to leave the lounge, Malone, Lynch and Fields entering the men's room and Zoeller going directly outside; the three of them left the restroom to go outside, Malone walking in front and Fields and Lynch somewhat behind; Zoeller pulled his car between them, Fields ordering Lynch into the car at gunpoint and telling Malone they would be back.
 
 
 4
 Lynch testified that Zoeller and Fields warned him that if he was setting them up he would be killed, and that Fields pointed his gun at Lynch's head and Zoeller had a gun in his lap. Malone testified that when Zoeller and Fields returned to the lounge parking lot with Lynch, Fields pointed his gun at Malone and told him that he would blow Malone's brains out if Malone didn't pay him the $2200. An off-duty policeman, observing Fields holding Malone at gunpoint, arrested Fields. Zoeller drove off, and was arrested three days later.
 
 
 5
 Zoeller testified that his sole reason for attending the August 23 meeting was to obtain payment on the Smith's NSF check from Lynch; that he had nothing to do with distributing drugs; that he had no weapon in his car when Lynch was present; and that the only threat he made against Lynch concerned paying him the amount of the worthless check. Zoeller also testified that he had a severe hearing loss in one ear, which impaired his ability to hear the conversations between Fields, Malone and Lynch in the lounge and parking lot, and between Fields and Lynch in his car.
 
 II.
 
 6
 The basic requirement of the Speedy Trial Act is that defendants be tried within seventy days from the commencement of prosecution. 18 U.S.C. Sec. 3161(c). If this time limit is exceeded, the Act requires on the motion of the defendant that the charges be dismissed. 18 U.S.C. Sec. 3162(a)(2). However, the Act prescribes numerous exceptions whereby time may be excluded from the running of the 'Speedy Trial clock.' 18 U.S.C. Sec. 3161(h). In particular, subsection (h)(1)(f) provides that the period from filing to disposition of pretrial motions shall be excludable. Where multiple defendants are charged on an indictment and no motion for severance has been granted, there is only one 'Speedy Trial clock' for all defendants. A delay attributable to one defendant is chargeable to all. 18 U.S.C. Sec. 3161(h)(7); see, e.g., United States v. Dennis, 737 F.2d 617, 620-21 (7th Cir.), cert. denied, 105 S. Ct. 215 (1984); United States v. Piteo, 726 F.2d 50, 52 (2d Cir.), cert. denied, 104 S. Ct. 2390 (1984); United States v. Campbell, 706 F.2d 1138, 1141 (11th Cir. 1983).
 
 
 7
 Zoeller, Fields and Keith were indicted on September 8, 1983. Fields entered his guilty plea on January 20, 1984. On February 10, 1984, the District Court ordered that the cases against Fields 'be passed for the Court's acceptance of the plea agreement and sentencing pending trial of the co-defendants,' and 'that the time between January 20, 1984, . . . and the date upon which the court accepts or rejects the agreement . . . and sentencing, shall be excluded under . . . Section 3161(h)(1)(I) . . ..' Zoeller and Keith were tried on September 12 and 13, 1984. Appellant calculates that if no excludable time were allowed, he and his co-defendants would have been entitled to trial no later than November 17, 1983. He then states that excludable time due to pretrial motions filed by the respective defendants extended this date to November 17 for himself and Keith, and January 20, 1984, for Fields. Therefore, he contends, under Sec. 3161(h)(7), Fields' January 20, 1984, trial date was the operative limit for all defendants.
 
 
 8
 Appellant has plainly misconstrued the effect of Sec. 3161(h)(7). It does not create three separate 'Speedy Trial clocks,' of which the latest applies to all co-defendants; as stated above, it creates a single clock, against which excludable time attributable to a single co-defendant is chargeable against all. From September 12 to December 19, the trial court was continually acting upon one or the other of various defendants' motions. This entire period constitutes excludable time for all co-defendants. Therefore, apart from any other periods prior to January 20 that may have been excludable,[1] at most only thirty-five includable days elapsed between September 8 and January 20.
 
 
 9
 Zoeller also contends that the District Court, by its February 10 order, could not retroactively exclude the time from January 20, when Fields entered his guilty plea, through February 10. The exclusions under the Act, except the interests of justice exclusion, however, are automatic; it is necessary neither that the government file a motion to exclude time nor that the court so order. United States v. Richmond, 735 F.2d 208, 212-13 (6th Cir. 1984). Subsection (h)(1)(I) provides that delay resulting from the consideration by the court of a proposed plea agreement is excludable, which under subsection (h)(7) would be chargeable to all defendants even if only attributable to one. Appellant's argument that when Fields entered his plea of guilty he was 'effectively severed' from appellant and Keith is meritless. By its terms, subsection (h)(7) applies where 'no motion for severance has been granted.' No motion for severance was made, let alone granted, in this case. Even if a motion for severance had been made, whether to grant the motion would rest within the discretion of the trial court. See, e.g., United States v. Davis, 582 F.2d 947, 952 (5th Cir. 1978) (no showing of prejudice from trial court's decision not to sever defendants from co-defendant who pled guilty before trial). Most of the time after January 20 was specifically excluded or excludable for reasons other than the pendency of Fields' guilty plea. Zoeller does not and cannot argue that his trial was unreasonably delayed because delay attributable solely to Fields was applied to him as well. The District Court did not err in refusing Zoeller's motion to dismiss the indictment against him pursuant to the Speedy Trial Act.
 
 III.
 
 10
 Prior to becoming a DEA informant, Lynch was arrested and charged in state court with a drug-related offense involving possession of a large quantity of cocaine. The state indictment was ultimately dismissed and a federal misdemeanor information filed against Lynch, which resulted in a one year probated sentence.
 
 
 11
 During cross-examination, defense counsel asked Lynch whether he had ever been involved in any 'con games' prior to his becoming involved in drug dealing. Lynch admitted he had. Defense counsel then asked what kind of con game, to which Lynch replied, 'With Billy Fields.' Government counsel then objected, and the court asked defense counsel where he was going with this line of questioning. Defense counsel replied:
 
 
 12
 MR. PARTIN: I'm going to impeach him, if the Court will permit me, from prior sworn testimony to what he's previously admitted, illegal acts he's committed with a codefendant, coconspirator in this case.
 
 
 13
 BY THE COURT: Well, that's--that's just not admissible, Mr. Partin.
 
 
 14
 MR. PARTIN: Well, if he testified under oath, Your Honor, that he'd never done anything illegal and in fact he has on a con game in duping people across the country out of money and things like that. That's what I intend to show.
 
 
 15
 The judge then sustained the objection, permitting defense counsel to put an avowal on the record. It is clear from the record of the avowal that the judge understood from the above statements of counsel, as well he could have, that it was counsel's intent to impeach Lynch by cross-examining him on the details of the con game in which he had admitted participating. See Fed. R. Evid. 608(b) (impeachment of witness on cross-examination by inquiry into '[s]pecific instances of conduct, . . . other than conviction of crime . . ., if probative of . . . untruthfulness'). Nor does Zoeller appeal on this basis. Rather, it was defense counsel's intent to impeach Lynch by prior inconsistent statement, by introducing a tape of Lynch's sworn testimony in an unrelated state grand jury proceeding, in which Lynch stated that prior to his involvement with drugs he had never done anything illegal. After observing that by this line of questioning defense counsel was going 'far afield,' the judge again sustained the government's objection.
 
 
 16
 Even though the judge sustained the objection, government counsel then requested that the Court specifically rule that the court was exercising its discretion under Fed. R. Evid. 608(b) in excluding the proffered testimony. Defense counsel replied that '[w]e weren't pursuant to 608(b).' The judge, however, did then rule that 'under 608, I'm going to exclude it.' Although defense counsel never cited the rule for prior inconsistent statement, it is clear that he intended that his proffer would be made under Fed. R. Evid. 613.
 
 
 17
 To the extent defense counsel was permitted to elicit an admission from Lynch that he had participated in a 'con game,' this testimony was not relevant to any substantive issue respecting the charges against Zoeller, but was offered solely for the purpose of attacking Lynch's credibility under rule 608(b), as a 'prior bad act' probative of untruthfulness. Defense counsel sought to introduce evidence that Lynch was unworthy of being believed because of his participation in the 'con game' as a bad act, then to introduce evidence that he had lied in stating that he had never engaged in illegal activity prior to his involvement with drugs (the grand jury testimony), as a prior inconsistent statement. Although Lynch's grand jury testimony was logically inconsistent with his admission that he had participated in a 'con game,' the grand jury testimony was not offered for the purpose of showing that the admission was untruthful. Rather, its relevance in terms of Lynch's credibility was as a separate 'bad act' probative of untruthfulness--lying under oath to a grand jury. Even if there is some advantage in proffering the latter evidence under rule 613 rather than 608(b),[2] it would be bootstrapping to permit testimony, relevant only for impeachment purposes under rule 608(b), to serve as the basis for introducing similarly relevant testimony on an unrelated matter under rule 613, rather than rule 608(b) as well. Cf. United States v. Barnes, 622 F.2d 107, 110 (5th Cir. 1980) ('[T]he defense could not inquire about her previous convictions in violation of Rule 609(a)(2) just to set her up for impeachment by a prior inconsistent statement.').[3] The trial court did not err in treating the proffered testimony under rule 608(b) rather than rule 613.
 
 
 18
 Nor did the trial court abuse its discretion in refusing to permit the proffered testimony under rule 608(b). Although the only specific statement of the judge forming the basis for his ruling was that the testimony was 'far afield,' it is plain from the avowal that the proffered testimony would have been both time-consuming and potentially confusing to the jury. See note 2 supra.
 
 
 19
 Appellant argues that Lynch's credibility 'was crucial to the determination of the case,' since 'MR. LYNCH'S testimony was refuted by MR. ZOELLER on virtually every point,' and therefore exclusion of the proffered evidence was prejudicial. First, Lynch's credibility was throughly attacked. Testimony reflecting on Lynch's credibility, motives and bias included details of Lynch's drug-related arrest and conviction, his inclusion in the federal witness protection and payments made to him as an informant, elicited during both direct and cross-examination. During cross-examination of Lynch, defense counsel established that Lynch had carried a gun during the time that he was involved in dealing drugs, that he had used cocaine while cooperating with the DEA, and elicited a denial that the drug transaction with Smith involving the $1200 check had been between Lynch and Smith alone. Smith subsequently testified to the contrary, claiming that he had told the DEA a different story at Lynch's request. Lynch also denied recalling ever having marijuana plants in the back of a truck he was driving. Lynch's uncle then testified to the contrary. Lynch's uncle also testified that Lynch was a 'fast talker,' describing one of Lynch's businesses as a 'scheme' and another as a 'hustle.' Thus, the jury had sufficient information upon which to make a discriminating appraisal of Lynch's credibility without the proffered evidence. See United States v. LaRiche, 549 F.2d 1088, 1097 (6th Cir.), cert. denied, 430 U.S. 987 (1977).
 
 
 20
 Second, although Lynch's testimony was important, it was not critical. The jury could have found Zoeller guilty of each of the counts on which he was convicted on the basis of Malone's testimony alone. The conspiracy and possession with intent to distribute counts are supported by Malone's testimony that appellant stated at the August 23 meeting that all of the cocaine sold by the appellant was of superb quantity and he didn't know why that sold to Lynch wasn't. Although only Lynch testified that appellant had a gun in his lap when Lynch, Fields and appellant left the meeting in appellant's car, Malone testified that Fields ordered Lynch into the car at gunpoint, and it is undisputed that Fields ordered Malone at gunpoint to pay him the $2200 after the car returned to the parking lot. Zoeller was charged on the weapons count under 18 U.S.C. Sec. 924(c)(1) and 18 U.S.C. Sec. 2, the general aiding and abetting section. The combined effect of these sections is that Fields' gun became Zoeller's as a matter of law. See Busic v. United States, 446 U.S. 398, 410-11 (1980); United States v. James, 528 F.2d 999, 1015 (5th Cir. 1976). Appellant's substantial rights were not affected when the trial court refused to permit defense counsel to cross-examine Lynch on his state grand jury testimony.
 
 
 21
 The judgment of the District Court is affirmed.
 
 
 
 [1]
 E.g., from January 9--when Zoeller orally requested and was granted a continuance of the trial date from January 23 to January 25--to January 25
 
 
 [2]
 While rule 608(b) specifically states that specific instances of conduct probative of untruthfulness may be inquired into 'in the discretion of the court,' and no such phrase is included in rule 613, rule 613 is subject to rules 403 and 611. 3 D. Louisell & C. Mueller, Federal Evidence Sec. 356, at 554-55 (1979). Under rule 403, it is within the trial court's discretion to exclude relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations or undue delay, waste of time, or needless presentation of cumulative evidence.' See In re Beverly Hills Fire Litigation, 695 F.2d 207, 217-18 (6th Cir. 1982), cert. denied sub nom. Bryant Elec. Co. v. Kiser, 461 U.S. 929 (1983). Under rule 611, the court has broad discretion in limiting the scope of cross-examination so as to make effective the ascertainment of the truth, avoid needless consumption of time, and protect witnesses from harassment of undue embarrassment, 'and a judge's ruling will not be the basis for reversal of a criminal conviction unless a defendant's substantial rights are affected.' United States v. Terry, 729 F.2d 1063, 1067 (6th Cir. 1984) (citations omitted). Although prior inconsistent statements may be proved by extrinsic evidence while prior bad acts may not, this difference is not relevant to the threshold question of admissibility
 
 
 [3]
 In Barnes, one of the government's principal witnesses admitted at a pretrial hearing that she had told the prosecutor and an FBI agent prior to trial that she had never been convicted of a crime, when in fact she had two misdemeanor shoplifting convictions. The court held that these convictions were not admissible under Fed. R. Evid. 609(a)(2), because the crimes did not involve dishonesty or false statement. 622 F.2d at 109-10. The court then rejected appellant's argument that the trial court erred in refusing to allow cross-examination of the witness concerning her untrue statement to the prosecutor and FBI agent. In doing so, it considered the admissibility of such testimony under both rule 608(b) and rule 613