IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-5623

Summary Calendar
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ALEJOS GARCIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

(June 30, 1993)

Before KING, DAVIS and WIENER, Circuit Judges.

PER CURIAM:

Alejos Garcia was charged with conspiracy to possess
marijuana with intent to distribute in violation of 21 U.S.C. §
846. After a jury trial, he was convicted and sentenced to a
term of imprisonment of sixty-three months to be followed by a
five-year term of supervised release. Garcia appeals his
conviction. Finding no error, we affirm.

**I.**

In August 1990, Texas authorities in San Antonio began
surveillance of Alejos Garcia and numerous other individuals who
were suspected to be marijuana traffickers. In particular, the

authorities observed various activities in and around a particular house in San Antonio. The authorities observed Alejos Garcia and another man, Carlos Garcia,[1] go in and out of the residence. Appellant and Carlos Garcia were eventually approached by police officers at a location other than the residence. According to police, when questioned, appellant appeared quite nervous and told numerous falsehoods regarding his prior activities. Appellant consented to a search of his automobile. Police found traces of marijuana scattered all over the trunk of the car. Appellant was at that point arrested. Police also recovered a pager and $1,000 in cash from his person.

The police then transported appellant and Carlos Garcia to a location where surveillance officers had observed the two men park a truck. Carlos Garcia admitted that the truck belonged to him. A search revealed that marijuana and wood chips were scattered in the truck. Police then searched the aforementioned residence. There police discovered a number of large wooden crates containing wood chips similar to the type found in Carlos Garcia's truck. One of those crates contained several bundles of marijuana wrapped in plastic. Other bundles were located throughout the house. A total of 250 pounds of marijuana was seized by police.

At trial, the owner of the house, Norma Satterlund, testified that Matilde Benavides, one of Garcia's co-

---

[1] The record does not indicate whether the two Garcias are related.

2

conspirators, had approached Satterlund and offered to pay her if she would permit Benavides to store marijuana at her house. On several occasions, Satterlund testified, Benavides and other men would bring crates of marijuana to be stored at her house. According to Satterlund, the men would employ a legitimate packing company to ship the crates to San Antonio, but would use fictitious names on the shipping documents.[2] Satterlund testified that she observed Alejos Garcia at her house on several occasions and that, in particular, Garcia was present during conversations about marijuana.

## II.

### A. Speedy Trial Claims

A grand jury in San Antonio, Texas, indicted Garcia and his co-defendants on November 28, 1990, for conspiring to possess marijuana with the intent to distribute.[3] Garcia was not arrested until almost a year later, on November 20, 1991. On December 17, 1991, Garcia waived his right to personally appear at his arraignment. His trial was scheduled to occur on April 6, 1992. On April 3, 1992, Garcia moved to dismiss the indictment on the ground that he was denied a speedy trial. The district

---

[2] A representative of the shipping company, Basse Truck Lines, testified at trial and corroborated Satterlund's testimony about the defendants' employment of the shipping company, which was unaware of the illicit product that was being shipped.

[3] A superseding indictment was returned by the grand jury on April 24, 1991, although the superseding indictment simply added charges against Garcia's co-defendants and in no way altered the original charges against Garcia.

3

court denied this motion.  Almost seventeen months later, on April 13, 1992, Garcia's trial began.  Garcia argues that the district court erred in not dismissing the indictment on the ground that the Government denied Garcia his right to a speedy trial under Rule 48(b) of the Federal Rules of Criminal Procedure,[4] the Speedy Trial Act, 18 U.S.C. § 3161(c)(1),[5] and the Sixth Amendment to the United States Constitution.[6]

**i) § 3161(c)(1)**

The Government, in its response to Garcia's motion to dismiss the indictment, conceded that sixty-nine days had passed between the date of Garcia's non-appearance at his arraignment,[7] December 19, 1991, and the proposed date of trial, April 6, 1992. Garcia argues that the time between his arrest on November 20, 1991, and the arraignment on December 19, 1991, should be also counted in calculating whether § 3161(c)(1)'s seventy-day period was exceeded by the Government.  We disagree.  When an indictment

---

[4] Rule 48(b) provides, in pertinent part, that "if there is an unnecessary delay in bringing the defendant to trial, the court may dismiss the indictment, information or complaint."

[5] Section 3161(c)(1) provides that a trial "shall commence *within seventy days* from the filing date (and making public) of the information or indictment, *or* from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs" (emphasis added).

[6] The Sixth Amendment provides a defendant with a right to a "speedy trial."  See Barker v. Wingo, 407 U.S. 514 (1972).

[7] Because Garcia waived his right to appear at his arraignment, we must treat his waiver as tantamount to a first appearance.

4

precedes an arrest -- as occurred in Garcia's case -- the first appearance before a judicial officer of the court in which the indictment has been filed is the triggering event. See 18 U.S.C. § 3161(c)(1). In this case, therefore, the time between Garcia's arrest and his non-appearance at the arraignment should be excluded in computing the seventy-day period.

Although the trial was scheduled to occur on April 6, 1991, the district court granted the Government a one-week continuance, which tolled § 3161(c)(1)'s seventy-day clock during the period of the continuance. According to Garcia, the continuance was unjustified and, thus, wrongly extended § 3161(c)(1)'s time-period beyond seventy days. The Government appeared at docket call on Friday, April 3, 1992, and announced ready for trial to commence the following Monday. On April 6, however, the Government announced to the district court that it had discovered over the weekend that an essential witness was unavailable to testify. The Government requested a continuance to secure the presence of the witness. An evidentiary hearing was held on the Government's motion, and the district court granted a one-week continuance of the trial.

Any period of delay resulting from the absence or unavailability of an "essential witness" is excluded in computing the seventy-day period. 18 U.S.C. § 3161(h)(3)(A). An essential witness shall be considered absent "when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due

5

diligence." 18 U.S.C. § 3161(3)(B). Ralph Sramek, the law enforcement officer who had been in charge of securing the Government's witnesses, testified that his procedure for communicating with Norma Satterlund had been by leaving a phone message at her residence with a relative and then receiving a return call from Satterlund. Prior to April 3, 1992, Sramek had not experienced any difficulty in having Satterlund return his calls. During the week prior to April 3, Sramek spoke with Satterlund on three separate days. On Thursday, April 2, Sramek made arrangements with Satterlund to meet on the following day, Friday, April 3, in San Antonio, Texas.

During their April 2 conversation, Satterlund informed Sramek that she had been continuously receiving a great deal of pressure not to cooperate with the Government following her testimony at the trial of Matilde Benavides, a coconspirator. According to Sramek, Satterlund claimed that her house had been "shot up" with a firearm and that her car had been set on fire. She nevertheless told Sramek that she would appear on April 3 in San Antonio to testify at Garcia's trial. After Satterlund failed to appear at the appointment scheduled for the afternoon of April 3, Sramek attempted to contact her on Friday, Saturday, and Sunday, but Satterlund never returned the calls.

In granting the Government's motion to continue the trial for one week, the district court explicitly found that Satterlund was unavailable and impliedly found that she was an "essential witness" for purposes of the Speedy Trial Act. We believe that

6

the district court did not abuse its discretion in granting the Government's motion for a continuance. Accordingly, there was no violation of the Speedy Trial Act because the trial took place within the seventy-day period.

## ii) The Sixth Amendment

Garcia further argues that the district court erred in denying his motion to dismiss the indictment because, as he alleges, he was denied a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution. The Sixth-Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of trial. United States v. Walters, 591 F.2d 1195, 1200 (5th Cir.), cert. denied, 442 U.S. 945 (1979). Constitutional speedy-trial claims are resolved by examining the following four factors: (i) the length of the delay; (ii) the reason for the delay; (iii) when the defendant asserted his right; and (iv) the prejudice to the defendant resulting from the delay. See Barker v. Wingo, 407 U.S. 514, 530 (1972). In assessing prejudice, a court should look to the following three policies behind the Sixth Amendment's guarantee of a speedy trial: (i) preventing oppressive pretrial incarceration; (ii) minimizing a defendant's anxiety and concern; and (iii) assuring that a delay does not impair the defense. See Millard v. Lynaugh, 810 F.2d 1403, 1406 (5th Cir.), cert. denied, 484 U.S. 838 (1987).

The first Barker factor -- whether the delay is of

sufficient length to be deemed "presumptively prejudicial," id. at 1406 -- is a threshold consideration. In this case, the delay from the time of the first formal federal charge, November 20, 1990, to the date of trial, April 13, 1992, was almost seventeen months. This court has ruled that a thirteen-month delay between indictment and trial is "presumptively prejudicial." See Davis v. Puckett, 857 F.2d 1035, 1040-41 (5th Cir. 1988). Accordingly, the delay in this case was also "presumptively prejudicial."

Therefore, we turn to the other Barker factors: the reason for the delay, the point at which the defendant asserted his rights, and the prejudice (if any) to the defendant resulting from the delay. See Barker, 407 U.S. at 530. The principal reason for the delay resulted from the Government's inability to apprehend Garcia, who was believed to be located in Laredo, Texas. During the hearing on Garcia's motion to dismiss the indictment, Sergeant Sramek testified concerning the efforts by the Government to locate and arrest Garcia. According to Sramek, he informed narcotics officers in Laredo, Texas, of the pending warrant for Garcia's arrest. Furthermore, "on numerous occasions," Sramek testified, he telephoned the narcotics officers in Laredo and requested them to look for Garcia. The officers in Laredo would then report back to Sramek regarding their lack of success. The evidence reflects that the delay in arresting Garcia was not caused by the Government's lack of diligence. In addition, once Garcia was arrested, there was no

8

significant delay in commencing trial.

With respect to the next Barker factor, Garcia did not complain about any trial delay until April 3, 1992, when he filed a motion to dismiss the indictment.  In addition, on February 27, 1992, Garcia himself moved to continue the trial.  With respect to the final Barker factor, Garcia argues that he was prejudiced by the delay because his key witness was unable to recall accurately "events of the distant past."  The record, however, does not indicate that the Government attempted any deliberate dilatory tactics in order to hamper the defense, which militates against a finding of prejudice.  Barker, 407 U.S. at 531.  Finally, we observe that Garcia has not alleged that he was subjected to oppressive pretrial incarceration or that he was anxious or concerned while awaiting trial.  Indeed, he would be hard pressed to make such an argument in view of the fact that he was at large for an entire year following the return of the indictment.

Taking into account all of the Barker factors, we believe that Garcia has failed to show that his constitutional right to a speedy trial was violated.  The district court, therefore, did not err in denying Garcia's motion to dismiss the indictment on constitutional grounds.[8]

---

[8] Because there was nothing approaching a Sixth Amendment violation in this case, we likewise believe that there was no violation of Rule 48(b) of the Federal Rules of Criminal Procedure.  This court has held that Rule 48(b) does not *require* dismissal absent a Sixth Amendment violation, see United States v. Hill, 622 F.2d 900, 908 (5th Cir. 1980), and that a district court has extremely broad discretion regarding whether to dismiss

## B. Sufficiency of the Evidence

Garcia contends that the only evidence to support the conviction was "impeached testimony from Norma Satterlund," an accomplice witness. In addressing a claim of insufficient evidence, we must ask "`whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

In effect, Garcia is arguing that the evidence is constitutionally insufficient because Satterlund should not have been believed. This court, however, is concerned only with the sufficiency -- not the weight -- of evidence. See United States v. Greenwood, 974 F.2d 1449, 1458 (5th Cir. 1992) ("whether judges doubt the credibility of a witness, even an accomplice witness cooperating with the Government, is beside the point in reviewing a sufficiency claim such as this"). The credibility of the witnesses and the weight of the evidence is the exclusive province of the jury. Id. Particularly in view of the corroborating evidence in this case, see supra Part I, we believe that a rational jury could find beyond a reasonable doubt that Garcia was a member of the conspiracy.

---

under Rule 48(b), see United States v. Novelli, 544 F.2d 800, 803 (5th Cir. 1977).

## C. Alleged Hearsay Testimony

Finally, Garcia argues that Satterlund's testimony regarding Garcia getting paid by a co-conspirator was improperly admitted. Satterlund's testimony reflects that she heard a discussion in which one of the co-conspirators demanded money to pay himself and others, including Garcia.  At trial, Garcia failed to object to this testimony on hearsay grounds.  If there is no contemporaneous objection to testimony whose admissibility is contested on appeal, the "plain error" standard of review applies.  See United States v. Lechuga, 888 F.2d 1472, 1480 (5th Cir. 1989).  In order to constitute plain error, the error must have been so fundamental as to have resulted in a miscarriage of justice.  Id.  A statement by a coconspirator made "during the course and in furtherance of the conspiracy" is not hearsay. FED. R. EVID. 801(d)(2)(E).  Statements regarding the payment of money for services rendered in accomplishing the illegal goals of a conspiracy can be considered to be "in the course and in furtherance of the conspiracy."  See United States v. Miller, 664 F.2d 94, 98-99 (5th Cir.), cert. denied, 459 U.S. 854 (1981); United States v. McGuire, 608 F.2d 1028, 1032-33 (5th Cir. 1979), cert. denied, 444 U.S. 1092 (1980).  Thus, there was no error in admitting the testimony, plain or otherwise.[9]

---

[9] We note that Garcia's attorney makes a reference in Garcia's appellate brief to alleged "outrageous conduct" by the Government in this case.  Because of Garcia's counsel's failure to adequately articulate his argument, we are unable to assess this claim.  However, our independent review of the record reveals no such misconduct.

**III.**

For the foregoing reasons, we AFFIRM Garcia's conviction.