IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 92-4218

UNITED STATES OF AMERICA

Plaintiff-Appellee,

v.

TERRENCE GADISON and
EARNEST EUGENE FERRELL,

Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of Texas

(November 15, 1993)

Before KING and BARKSDALE, Circuit Judges, and DUPLANTIER,*
District Judge.

DUPLANTIER, District Judge:

Defendants Terrence Gadison and Earnest Eugene Ferrell were convicted of conspiracy to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. §§ 841 (a)(1) & 846. They both appeal their convictions and sentences. We affirm Gadison's conviction but vacate his sentence and remand for resentencing. We affirm Ferrell's conviction and sentence.

I. Sufficiency of the Evidence.

Both defendants contend that the district court erred in denying their motions for judgment of acquittal based upon the insufficiency of the evidence. The convictions of both Gadison and

* District Judge of the Eastern District of Louisiana, sitting by designation.

Ferrell are based, in large measure, upon the testimony of their alleged co-conspirators, Tarolynn Scott and William Simpson. Defendants contend that the testimony of these individuals was incredible as a matter of law and that therefore, the evidence was insufficient to support their convictions.  Gadison also argues that the evidence did not establish the amount of cocaine base for which he was convicted.  Ferrell contends that even considering the co-conspirators' testimony, the evidence at trial proved only that he associated with members of a drug conspiracy and was often present at a notorious drug haunt.

In assessing the sufficiency of evidence, "we determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt."  United States v. Pruneda-Gonzalez, 953 F.2d 190, 193 (5th Cir.), cert. denied, 112 S.Ct. 2952 (1992).  In order to support a conviction, the evidence need not eliminate all possible hypotheses of innocence or be wholly inconsistent with every conclusion except guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.  Id.  In assessing the sufficiency of evidence, a reviewing court is not to make determinations concerning the credibility of witnesses.  United States v. Casel, 995 F.2d 1299, 1303 (5th Cir. 1993).

A detailed discussion of the evidence is unnecessary. Suffice it to say that the testimony of both of the alleged co-conspirators, Scott and Simpson, (some of which is discussed in detail hereafter), if believed by the jury, was amply sufficient to establish that each defendant voluntarily agreed together and with others to possess 50 grams or more of cocaine base with intent to distribute the drug. See United States v. Rodriguez, 993 F.2d 1170, 1175 (5th Cir. 1993). Moreover, the circumstantial evidence to corroborate that testimony was strong,[1] and the testimony of both defendants to the contrary was incredible in many respects.

A. Incredibility of the Government's Witnesses

Both Gadison and Ferrell contend that the testimony of Scott and Simpson, their alleged co-conspirators who testified pursuant to plea agreements, was incredible as a matter of law because it was uncorroborated, often contradictory, and given in connection with plea agreements with the government. Additionally, both defendants contend that the jury should have disregarded Scott's testimony on account of her various disabilities.[2]

---

[1] "'[C]ircumstances altogether inconclusive, if separately considered, may, by their number and joint operation . . . be sufficient to constitute conclusive proof.'" United States v. Lechuga, 888 F.2d 1472, 1476 (5th Cir. 1989)(quoting Coggeshall v. United States (The Reindeer), 69 U.S. (2 Wall.) 383, 17 L.Ed. 911, 914-15 (1865)).

[2] Scott is a recovering drug addict and suffers from an emotional disorder which requires her to continually take medication to prevent mood swings.

It is well established that a conspiracy conviction may be based upon the uncorroborated testimony of a co-conspirator, even when that testimony is from one who has made a plea bargain with the government, provided that the testimony is not incredible or otherwise insubstantial on its face.  United States v. Osum, 943 F.2d 1394, 1405 (5th Cir. 1991).  Because the jury is the ultimate arbiter of witness credibility, "[t]he test for 'incredibility' of a witness is an extremely stringent one."  Casel, 995 F.2d at 1304.  To be considered incredible as a matter of law, a witness' testimony must "assert[] facts that the witness physically could not have observed or events that could not have occurred under the laws of nature."  Osum, 943 F.2d at 1405.

There is nothing in the testimony of Simpson and Scott which indicates that either of them testified as to facts that they could not have possibly observed or which challenge the laws of nature.  Therefore their testimony can not be considered incredible as a matter of law.  See Casel, 995 F.2d at 1304-05.

Defendants' arguments regarding Scott's disabilities speak only to her credibility, not the admissibility of her testimony.  See, e.g., United States v. Garner, 581 F.2d 481, 485 (5th Cir. 1978)(explaining fact that witness is drug user bears upon witness credibility).  We reiterate that we are "concerned only with the sufficiency--not the weight--of evidence."  United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993).

Because the jury was the final arbiter of the credibility of the government's two primary witnesses, the jury's decision to

4

credit the testimony of Scott and Simpson cannot be disturbed on appeal.  See id.


B.  Fifty Grams of Cocaine Base--Gadison

Gadison contends that the government's evidence is insufficient to support a finding that the conspiracy for which he was convicted involved 50 grams or more of cocaine base, as charged in the indictment.  Gadison emphasizes his view that the only evidence with respect to the amount of cocaine base involved in the conspiracy was with respect to the amount seized when Scott and Simpson were arrested, 36.30 grams.

Contrary to Gadison's assertions, the record contains ample evidence to support the jury's conclusion that more than 50 grams of cocaine base were involved in this conspiracy.  Tarolynn Scott testified that the 36.30 grams seized from the car when she was arrested had an approximate value of $1,400.00.  She also testified that on another of the seven to eight trips she made to Port Arthur to sell crack cocaine for Gadison, she had observed Gadison count out $3,200.00 in drug proceeds.  The reasonable inference to be drawn from this testimony is that at least one of Scott's trips to Port Arthur involved over 80 grams of cocaine base.  Viewed favorably to the verdict, Scott's testimony alone established that the conspiracy involved 50 grams of cocaine base.  Simpson also testified that the amount of crack cocaine sold on each of the five trips he made to Port Arthur was approximately an ounce and one-half or approximately 42 grams per trip.  After a careful review of

5

the record, we conclude that, based upon the testimony of Scott and Simpson, a rational jury could find beyond a reasonable doubt that the conspiracy of which Gadison was a member involved at the very least 50 grams of cocaine base.

II. Denial of Appointment of Investigator--Ferrell.

Prior to trial, Ferrell's counsel filed a motion pursuant to 18 U.S.C. § 3006A(e)(1) for the appointment of a private investigator at the government's expense. In this motion, counsel asserted that Ferrell was unable financially to employ investigative services and that an investigation was required because "the charges include allegations of offenses which supposedly took place in December, 1990 and January, 1991, and some of which may have occurred in Harris County, Texas." The district court denied Ferrell's motion. Ferrell contends that the district court erred in denying his request for the appointment of an investigator and that he was prejudiced because witnesses who were to testify on his behalf could not make the trip from Houston to Beaumont.

We review the district court's refusal to appoint an investigator "'in light of only the information available to the trial court at the time it acted on the motion.'" United States v. Davis, 582 F.2d 947, 951 (5th Cir. 1978)(quoting United States v. Theriault, 440 F.2d 713, 715 (5th Cir. 1971)), cert. denied, 441 U.S. 962, 99 S.Ct. 2408 (1979). To justify the authorization of investigative services under § 3006A(e)(1), a defendant must

demonstrate with <u>specificity</u>, the reasons why such services are required.  <u>Id.</u>

In <u>Davis</u>, we held that a request for investigative services did not pass muster under § 3006A(e) where the defendant failed to provide an explanation of the relevance of witnesses he wished to contact, he failed to identify any leads he wished to follow, and he did not demonstrate that he had exhausted other investigative efforts.  582 F.2d at 951-52.

The motion filed by Ferrell's counsel did not show with any specificity that investigative services at the government's expense were merited.  No indication was made that <u>any</u> prospective witnesses or other evidence existed in Harris County likely to be relevant to Ferrell's defense.  Moreover, no showing was made that defense counsel had ferreted out information through his own efforts which was likely to lead to the discovery of relevant evidence.  Without such specificity, the district court could not adequately appraise Ferrell's need for investigative services.  The trial court did not abuse its discretion in denying Ferrell's motion.

III. Prior Conviction--Ferrell.

In September of 1990, Ferrell was convicted in Texas state court of unlawful possession of cocaine.  In the present case, Ferrell filed a motion in limine at trial seeking to prevent any reference to this prior conviction at trial.  Outside of the presence of the jury, the government offered Ferrell's prior

conviction under Fed. R. Evid. 404(b) to establish his knowledge, motive or intent in the charged offense. The district court ruled that Ferrell's prior conviction was relevant to the issue of intent under Fed. R. Evid. 404(b), and overruled defense counsel's objection that its probative value was outweighed by the danger of unfair prejudice under Fed. R. Evid. 403. The court permitted the government to introduce the conviction for the limited purpose of showing Ferrell's state of mind or intent. Ferrell argues that the district court erred in admitting his prior conviction for possession of cocaine because it was not relevant to the offense charged and its prejudicial effect outweighed its probative value.

The district court admitted Ferrell's prior conviction under Rule 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of . . . intent.

Fed. R. Evid. 404(b). In considering whether to admit extrinsic offense evidence to show intent, a court must engage in a two-step inquiry:

> First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [Fed. R. Evid.] 403.

United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978)(en banc), cert. denied, 440 U.S. 920, 99 S.Ct. 1244 (1979). The district court's ruling under Rules 403 and 404(b) is reviewed for abuse of discretion. See United States v. Hutchins, 818 F.2d 322,

8

328-29 (5th Cir. 1987), cert. denied, 484 U.S. 1041, 108 S.Ct. 772 (1988).

We conclude that the district court did not abuse its discretion in finding Ferrell's prior conviction for possession of cocaine relevant to his intent in the charged offense and more probative than prejudicial. Ferrell put his intent at issue when he entered his plea of not guilty to the conspiracy charge in the indictment. See United States v. Prati, 861 F.2d 82, 86 (5th Cir. 1988)("in a conspiracy case the mere entry of a not guilty plea raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence"). A prior conviction for possession of cocaine is probative of a defendant's intent when the charge is conspiracy to distribute. United States v. Vaquero, 997 F.2d 78, 87 (5th Cir. 1993).

Alternatively, we conclude that any error from the admission of evidence of Ferrell's prior offense was harmless. "In a harmless error examination, '[w]e must view the error, not in isolation, but in relation to the entire proceedings.'" United States v. Williams, 957 F.2d 1238, 1244 (5th Cir. 1992)(quoting United States v. Brown, 692 F.2d 345, 350 (5th Cir. 1982)). We must decide whether the inadmissible evidence actually contributed to the jury's verdict; we will reverse a conviction only if the evidence had a "substantial impact" on the verdict. United States v. El-Zoubi, 993 F.2d 442, 446 (5th Cir. 1993).

We conclude that the admission of Ferrell's prior conviction had no substantial influence on the jury's decision to convict. In

9

addition to the detailed testimony of the two co-conspirators, there was a significant amount of strong circumstantial evidence establishing Ferrell's membership in the conspiracy and negating his defense. Thus, the admission of Ferrell's prior conviction added little to the government's case. No detailed explanation of the facts underlying the prior conviction was made; the only mention made of the conviction after its introduction by the government was during defense counsel's direct examination of Ferrell. Finally, the district court minimized any potential undue prejudice by instructing the jury that they were not to consider the conviction in deciding whether Ferrell committed the charged offense, but only for the purposes of establishing intent and assessing credibility. See, e.g., United States v. Gordon, 780 F.2d 1165, 1174 (5th Cir. 1986)(holding improper admission of extrinsic act evidence may be cured by limiting instruction). In light of the record as a whole, we conclude that the jury's verdict was not substantially influenced by the admission of Ferrell's prior conviction.

IV. Sentencing.

We next consider the various challenges made by the defendants to their respective sentences. Gadison argues that the district court erroneously considered a prior misdemeanor conviction for theft by check in determining his criminal history score. He also contests the district court's determination that he displayed a leadership role in the conspiracy. Ferrell argues that the

10

district court erred in determining that he was not entitled to a reduction in his sentence as a minimal or minor participant in the offense.

The factual findings of the district court regarding sentencing matters are entitled to substantial deference, and we will disturb those findings only if they are clearly erroneous. United States v. Whitlow, 979 F.2d 1008, 1011 (5th Cir. 1992). A factual finding is clearly erroneous only where it is implausible in light of the record read as a whole. Id. We review the district court's interpretation of the Sentencing Guidelines de novo. United States v. Madison, 990 F.2d 178, 182 (5th Cir. 1993).

### A. Criminal History--Gadison

Gadison pleaded guilty in 1990 to the Texas state offense of theft by check and was sentenced by the Texas state court to pay a $200.00 fine. Based on this prior conviction, the district court added one point to Gadison's criminal history score pursuant to section 4A1.1(c) of the Sentencing Guidelines. This boosted Gadison's criminal history category from category I to category II under section 4A1.1 of the Guidelines. Gadison contends that pursuant to section 4A1.2(c), his prior conviction for theft by check should not have been counted in computing his criminal history score, because it is similar to an exempted offense. We review the district court's application of the Sentencing Guidelines de novo. United States v. Moore, 997 F.2d 30, 34 (5th Cir. 1993).

11

Misdemeanor offenses and petty offenses are generally considered in calculating a defendant's criminal history score. U.S.S.G. § 4A1.2(c). However, section 4A1.2(c)(1) provides that certain enumerated offenses and "offenses similar to them" are to be disregarded unless "(A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense." U.S.S.G. § 4A1.2(c)(1). One of the enumerated offenses is "[i]nsufficient funds check". Id. Because Gadison received only a $200.00 fine as a result of his prior conviction for theft by check, and because theft by check is not similar to the instant drug offense, his prior conviction should not have been included in his criminal history if that conviction is similar to the offense of "insufficient funds check". Id.

In United States v. Hardeman, 933 F.2d 278 (5th Cir. 1991), we established a "common sense" approach to determine when a prior offense is "similar" to one of the enumerated exempted offenses in § 4A1.2(c)(1). The Hardeman approach requires the district court to assess all factors of similarity, including

> a comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

Hardeman, 933 F.2d at 281. A court employing the Hardeman factors should do so cognizant of the fact that the criminal history factors are designed to take into account the relative severity of

12

a prior offense as well as the degree to which it indicates the likelihood of future criminal behavior. Id. at 281-82. We are mindful that the Hardeman "factors should assist the district court in determining whether it makes good sense to include the offense in question in the defendant's criminal history score." Id. at 281 (emphasis in original). Applying the Hardeman factors, we conclude that the facts involved in Gadison's prior conviction of the Texas state offense of theft by check constitute a "similar offense[] to" the offense of "insufficient funds check", U.S.S.G. § 4A1.2(c)(1), and should not have been considered in calculating Gadison's criminal history score.

The redactors of the Guidelines Manual could not have listed by title the crimes established by statute in the fifty states and the United States Congress. Instead, they used generic terms such as "insufficient funds check", without attempting to define the "generic" crimes. Texas' name for the "insufficient funds check" crime is apparently "issuance of bad check". Tex. Penal Code Ann. § 32.41 (Vernon 1989 & Supp. 1993).

Under a comparative punishment analysis, Gadison's prior conviction for theft by check is identical to the Texas offense of issuance of a bad check. We base this conclusion upon the facts underlying Gadison's state offense, including lack of evidence submitted by the government (see note 3 infra), the class of the theft by check offense for which he was convicted, and the sentence he received. Our holding is fact specific; how a Guidelines sentence might be affected by a theft by check offense under other

13

facts, including the class of conviction and sentence, is not before us. Texas law categorizes the offense of issuance of a bad check as a Class C misdemeanor. Tex. Penal Code Ann. § 32.41(f). In 1990, when Gadison was convicted in the Texas state court, the penalty for a Class C misdemeanor was a fine not to exceed $200.00. Tex. Penal Code Ann. § 12.23 (Vernon 1974). On the other hand, classification of theft by check under Texas law ranges from a Class 1 felony to a Class C misdemeanor depending on the value of the property involved. Tex. Penal Code Ann. § 31.03(e) (Vernon 1989 & Supp. 1993). Based on the $200.00 fine imposed by the Texas state court, and on the only evidence at his sentencing hearing, we conclude that Gadison pleaded guilty to a Class C misdemeanor.[3] "The level of punishment imposed for a particular offense serves as a reasonable proxy for the perceived severity of the crime." Hardeman, 933 F.2d at 282. The fact that Gadison received merely a fine of $200.00 indicates that the State of Texas views the offense to which Gadison pleaded guilty as similar to issuance of a bad check.

Comparing the elements of insufficient funds check and the Texas state offense of theft by check leads us also to the

---

[3] Gadison's presentence report does not provide any of the facts underlying his prior conviction for theft by check. However, Gadison asserted in his written objections and again at sentencing that he had pleaded guilty to a Class C misdemeanor for theft by check. A document attached to Gadison's written objections indicates that Gadison did in fact plead guilty to a Class C misdemeanor. The government, which has the burden of proving the facts supporting an enhancement of a defendant's sentence, United States v. Sanders, 942 F.2d 894, 897 (5th Cir. 1991), offered no evidence to the contrary.

conclusion that the two offenses are sufficiently similar to warrant exclusion of Gadison's theft by check conviction from Gadison's criminal history score. Under Texas law, a person commits the offense of "issuance of bad check"

> if he issues or passes a check or similar sight order for the payment of money knowing that the issuer does not have sufficient funds in or on deposit with the bank or other drawee for the payment in full of the check or order as well as all other checks or orders outstanding at the time of issuance.

Tex. Penal Code Ann. § 32.41(a). The Texas Penal Code provides that a person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code Ann. § 31.03(a). The Texas theft statute also states that

> [i]f the actor obtained property or secured performance of service by issuing or passing a check or similar sight order for the payment of money, when the issuer did not have sufficient funds in or on deposit with the bank or other drawee for the payment in full of the check or order as well as all other checks or orders then outstanding, his <u>intent</u> <u>to</u> <u>deprive</u> the owner of property under Section 31.03 of this code (Theft) . . . <u>is</u> <u>presumed</u>.

Tex. Penal Code Ann. § 31.06(a)(Vernon 1989 & Supp. 1993)(emphasis added).

The principal distinction between the Texas state offense of theft by check and the Texas state offense of issuance of a bad check is that theft by check requires the additional element of a specific bad result--that defendant acquire property of a particular value from the victim. <u>Cheney v. State</u>, 755 S.W.2d 123, 128 (Tex. Crim. App. 1988)(en banc)(quoting <u>Christiansen v. State</u>,

15

575 S.W.2d 42, 44 (Tex. Crim. App. 1979)). We conclude that such a distinction does not render the two offenses sufficiently dissimilar to warrant inclusion of the Class C misdemeanor theft by check offense in Gadison's criminal history score under section 4A1.2(c)(1).

Hardeman directs that we consider "the level of culpability involved." 933 F.2d at 281. We regard the Guideline "offense" of "insufficient funds check" and the Texas misdemeanor "theft by check" as involving comparable degrees of culpability. Finally, we conclude that Gadison's conviction for theft by check does not "indicate[] a likelihood of recurring criminal conduct," Hardeman, 933 F.2d at 281, especially since to qualify as a Class C misdemeanor, the theft involved under $20.00. See Tex. Penal Code Ann. § 31.03(e)(1). "[T]he seriousness of the offense is one indication of whether the offense has any predictive capacity for future criminality." Hardeman, 933 F.2d at 283.

In sum, we conclude that the offense of theft by check to which Gadison pleaded guilty is "similar" to the offense which the Guidelines refer to as "insufficient funds check" for purposes of section 4A1.2(c)(1). Therefore, the district court erred by including Gadison's prior theft by check conviction in his criminal history score under section 4A1.2(c), and we must remand for resentencing.

16

B. Leadership Role--Gadison

Gadison's presence report ("PSR") concluded that he was a leader or organizer of a conspiracy involving five or more participants and therefore recommended the enhancement of Gadison's base offense level by four levels pursuant to § 3B1.1(a) of the Sentencing Guidelines. Prior to the sentencing hearing, Gadison's counsel filed a motion for an evidentiary hearing on his objections to the PSR, including the recommended four level enhancement. Gadison requested the hearing primarily for the purpose of cross-examining an individual who did not testify at trial, but who provided information included in the PSR concerning Gadison's role in the offense. The district court denied Gadison's motion and enhanced his base offense level as suggested by the PSR.

Gadison contends that there was insufficient evidence to find either that five individuals were involved in the conspiracy, or that Gadison was a leader or organizer. Gadison also argues that the district court's failure to provide him with an evidentiary hearing concerning his leadership role effectively deprived him of his due process rights under the Fifth Amendment and his right to confront his accusers under the Sixth Amendment.

We first address Gadison's challenge to the sufficiency of the evidence underlying the district court's factual findings. An enhancement under section 3B1.1(a) must be supported by a factual finding that, with respect to the transaction which serves as the basis for the conviction, "the defendant was an organizer or leader of a criminal activity that involved five or more participants or

17

was otherwise extensive."  In measuring the number of participants in a criminal enterprise, the sentencing court's focus is upon "the number of <u>transactional</u> participants, which can be inferentially calculated provided that the court does not look beyond the offense of conviction to enlarge the class of participants." <u>United States v. Barbontin</u>, 907 F.2d 1494, 1498 (5th Cir. 1990)(emphasis in original).  However, the "offense" to be considered "is broader than the offense charged, and includes the 'contours of the underlying scheme itself.'" <u>United States v. Kleinebreil</u>, 966 F.2d 945, 955 (5th Cir. 1992)(quoting <u>United States v. Mir</u>, 919 F.2d 940, 945 (5th Cir. 1990)).  In other words, "the scope to be considered . . . encompasses . . . the underlying activities and participants that directly brought about the more limited sphere of the elements of the specific charged offense." <u>United States v. Manthei</u>, 913 F.2d 1130, 1136 (5th Cir. 1990).

In the instant case, there was substantial evidence to establish Gadison as an organizer or leader in a criminal activity involving four other participants, and Gadison himself may be counted as a participant for purposes of § 3B1.1(a).  <u>Barbontin</u>, 907 F.2d at 1498.  Tarolynn Scott and William Simpson admitted that they were participants in the conspiracy.  Scott also testified that Ms. Emma, the owner of the Family Diner, safeguarded drug proceeds for Gadison.  Clearly, Ms. Emma can be considered a "participant" for purposes of section 3B1.1(a) inasmuch as her actions "directly brought about . . . the elements of the specific charged offense." <u>Manthei</u>, 913 F.2d at 1136.  Her role formed an

18

inseparable part of the larger distribution scheme.  Finally, co-defendant Ferrell may be counted as the fifth participant.  We conclude that the evidence at trial adequately supported the district court's finding that the conspiracy involved at least five persons.

Gadison also contends that the evidence was insufficient to support the district court's determination that he was a leader or organizer.  In determining whether a defendant was a leader or organizer, the sentencing court should consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, Application note 3; see United States v. Rodriguez, 897 F.2d 1324, 1325-26 (5th Cir.), cert. denied, 498 U.S. 857, 111 S.Ct. 158 (1990).

Applying these factors to the present case, we have no difficulty in concluding that Gadison orchestrated almost every aspect of this conspiracy.  There was evidence that Gadison:

- decided when trips to Port Arthur would take place.

- set the sale price of the crack cocaine.

- enlisted the assistance of Ferrell, Simpson and Scott.

- processed the crack cocaine for distribution.

- prepared his own vehicle to transport the crack cocaine by secreting the drugs and a firearm therein.

- contacted Scott to tell her when trips to Port Arthur would take place.

19

- often accompanied his co-conspirators on junkets to Port Arthur.

- collected the drug proceeds and paid Scott and Simpson therefrom.

Because the evidence at trial was amply sufficient to support the district court's conclusion that Gadison exercised a leadership role in a conspiracy involving at least five participants, the district court did not err in refusing to grant Gadison an evidentiary sentencing hearing.

### C. Relevant Conduct--Ferrell

Ferrell's PSR held him accountable for 291 grams of cocaine base, the estimated amount delivered by Tarolynn Scott when she was accompanied by Ferrell and Gadison. The PSR also held Ferrell responsible for the .32 caliber revolver confiscated from Scott and Simpson. However, in calculating Ferrell's offense level under section 1B1.3 of the Sentencing Guidelines, the district court held him accountable only for the 36.30 grams of cocaine seized when Scott and Simpson were arrested, not the additional cocaine, and not the revolver. The district court concluded that the drugs seized from Scott and Simpson were being delivered in furtherance of the conspiracy and that their delivery was reasonably foreseeable by members of the conspiracy, but Ferrell could not have reasonably foreseen that his co-defendants would be carrying a firearm.

Ferrell argues that the district court erred in determining that it was reasonably foreseeable for him to know that Scott and

20

Simpson were delivering 36.30 grams of crack cocaine on the date they were arrested. Ferrell argues that if he could not foresee that the firearm would be in the car, he could not have known that the conspiracy involved 36.30 grams of cocaine base.

Under the version of section 1B1.3 in effect at the time of Ferrell's sentencing, a district court could hold a defendant accountable for "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable." U.S.S.G. § 1B1.3(a)(1)(1991). Conduct for which a defendant would be otherwise accountable includes "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, Application note 1 (1991). The application notes to the present version of § 1B1.3, effective November 1, 1992,[4] stress that "the scope of the criminal activity jointly undertaken by the defendant . . . is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant." U.S.S.G. § 1B1.3, Application note 2 (1992).

It is clear from the record that the conduct of Scott and Simpson in transporting the 36.30 grams seized by the authorities was within the scope of the jointly-undertaken activity to which Ferrell agreed and was reasonably foreseeable by him. The jointly-

_____

[4] We may consider the November, 1992, revisions because the Sentencing Commission, by amending section 1B1.3, intended merely to clarify the scope of relevant conduct under § 1B1.3. United States v. Maseratti, 1 F.3d 330, 340 (5th Cir. 1993).

undertaken activity to which Ferrell agreed was the transportation of crack cocaine, often in amounts well over 36.30 grams, from Houston to Port Arthur for distribution outside the Family Diner. Ferrell's agreement can be fairly inferred from his conduct. The evidence at trial showed that on more than one occasion, Ferrell accompanied Tarolynn Scott and William Simpson to Port Arthur in order to sell crack cocaine.

Furthermore, the evidence revealed that Ferrell worked closely with Gadison, the leader of the conspiracy, was present when crack cocaine was being processed, and sold crack cocaine outside the Family Diner. Thus, the record clearly shows that Ferrell was aware of the extent of drug distribution involved in the conspiracy. The district court's refusal to hold Ferrell accountable for the revolver placed in the car by Gadison is not inconsistent with and does not affect the court's decision with respect to the amount of crack cocaine for which Ferrell can be held accountable. In contrast to the substantial evidence indicating Ferrell's knowledge as to the amounts distributed in furtherance of the conspiracy, there was no evidence presented at trial which indicated that Ferrell was ever aware that a firearm was used in furtherance of the conspiracy.

### D. Minimal or Minor Role--Ferrell

Ferrell contends that the district court should have reduced his offense level under § 3B1.2 of the Sentencing Guidelines because his participation in the conspiracy was minimal, or at most

22

minor. Ferrell's claim is based upon the contention that he was a "peripheral member" of the conspiracy who lacked complete knowledge or understanding of the scope of the conspiracy.

Section 3B1.2 provides that a district court must reduce a defendant's offense level by four levels if it determines that the defendant is a minimal participant in the offense for which he was convicted, U.S.S.G. § 3B1.2(a), or by two levels if the defendant was a minor participant. U.S.S.G. §3B1.2(b). A defendant who is "plainly among the least culpable of those involved in the conduct of a group" is characterized as a "minimal participant". U.S.S.G. § 3B1.2, Application note 1. A defendant should be considered a "minor participant" if he is "less culpable than most other participants, but [his] role could not be described as minimal." U.S.S.G. §3B1.2, Application note 3. A downward adjustment under § 3B1.2 is generally appropriate only where a defendant was "'substantially less culpable than the average participant.'" United States v. Buenrostro, 868 F.2d 135, 138 (5th Cir. 1989)(emphasis in original)(quoting U.S.S.G. § 3B1.2, Commentary), cert. denied, 495 U.S. 923, 110 S.Ct. 1957 (1990). A court "need not accept the defendant's self-serving account of his role in [a] drug organization." Id.

The trial testimony provides ample support for the district court's determination that Ferrell did not play a minimal or minor role in the conspiracy for which he was convicted. In fact, Ferrell was a significant member of the conspiracy, and his culpability was comparable to that of his co-conspirators. The

23

evidence showed that crack cocaine was processed for distribution in Ferrell's home, making it a base of operation for the conspiracy. Ferrell also accompanied Gadison and other co-conspirators on several trips to Port Arthur for the purpose of distributing crack cocaine. Significantly, Ferrell sold crack cocaine outside the Family Diner. Ferrell's own testimony showed him to be a close aide to Gadison, the leader of the conspiracy. Based upon this evidence, the district court's finding that Ferrell's role was neither minimal nor minor was not clearly erroneous, and Ferrell was not entitled to an adjustment under § 3B1.2.

V. Conclusion

For the foregoing reasons, we AFFIRM Gadison's conviction but VACATE his sentence and REMAND for resentencing. We AFFIRM Ferrell's conviction and sentence.