UNITED STATES of America, Plaintiff-Appellant,

v.

Raymond G. NOVELLI, Defendant,

Fred L. Gaines, Claude T. Allen, Cornelius J. Kehoe, and Ray K. Bullock, Defendants-Appellees.

No. 75-3078.

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1977.

Rehearing and Rehearing En Banc Denied March 3, 1977.

Mary L. Sinderson, George A. Kelt, Jr., Jack O'Donnell, James R. Gough, Jr., Asst. U. S. Attys., Houston, Tex., for plaintiff-appellant.

Thomas W. Moore, Eric J. Hopkinson, Ray Montgomery, Houston, Tex., for Gaines.

J. Edwin Smith, Houston, Tex., for Kehoe and Allen.

Randy L. Schaffer, Jr., Houston, Tex., for Bullock.

Before JONES, WISDOM and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

In a number of cases we have affirmed orders of district judges refusing to dismiss indictments for failure to comply with Rule 50(b) plans for prompt disposition of criminal cases.[1] In this case we affirm the order of a district judge dismissing with prejudice indictments against five defendants[2] for want of compliance with the 50(b)

---

1. *U. S. v. Rodriguez*, 497 F.2d 172 (CA5, 1974); *U. S. v. Benavides*, 505 F.2d 733 (CA5, 1974); *U. S. v. Maizumi*, 526 F.2d 848 (CA5, 1976); *U. S. v. Bloom*, 538 F.2d 704 (CA5, 1976).

Also, in *U. S. v. Shepherd*, 511 F.2d 119 at 124 n.6 (CA5, 1975), we denied on the merits a motion to dismiss which raised on appeal for the first time the question of failure to abide by the 50(b) plan. The plan had only recently become effective, and the delay was only two months beyond the 90 days provided by the plan.

*Rodriguez* contains a full discussion of the purposes of 50(b) plans and the responsibilities that they impose on courts and prosecutors.

2. Seven defendants, Gaines, Allen, Kehoe, Bullock, Lambert, Novelli and Collins, were indicted January 17, 1973, on charges arising under

plan of the Southern District of Texas. It is not necessary that we consider the judge's finding that these five defendants' Sixth Amendment rights to speedy trial also were violated.

Defendants were arraigned July 13, 1973, and pleaded not guilty. No further hearings or appearances occurred until late June 1975, almost two years later. Defendants never moved for continuances and did not engage in any delaying tactics.

Under ¶ 2 of the plan defendants were to be put to trial within 90 days after arraignment. This was exceeded by approximately 21 months. No orders were ever entered extending the time for trial, as permitted by ¶ 3.

If a case has not been set for trial within four months after arraignment the United States Attorney must advise the judge to whom the case is assigned of this fact and must state that the government is ready for trial (or will be ready within a stated time) and must ask for a trial date. Plan, ¶ 11(c). Such a notice was due on November 13, 1973. None was given until September 1974, ten months late and 14 months after arraignment. The U. S. Attorney gave another such notice in February 1975. The court did not take any action in response to these requests.

On March 3, 1975, argument was held before this court in *U. S. v. Kehoe and Bullock*, 516 F.2d 78, 5 Cir., a related appeal from the Southern District of Texas. In the course of the argument members of this court pointed out to counsel for the United States that the case now before us might already have "withered on the vine" because of delay. As will appear below, the lower court did not act to set the instant case for trial until almost four months after the pointed warning from this court to the prosecutor. In April 1975 the government filed a formal motion requesting a trial setting. The judge made no setting in response to this motion.

For the entire period of almost two years after arraignment the cases remained assigned to the same judge despite the provision of ¶ 10(b) of the plan that reassignments shall be made as appropriate to carry out the purposes of the plan.

■ In June 1975 the Southern District of Texas embarked on a "crash program" to move to trial its substantial backlog of criminal cases. On June 26 this case was reassigned to another judge and set for trial on July 6. Defendants moved to dismiss. The judge conducted a conference with counsel in chambers. He expressly took judicial notice of statistical data compiled by the Administrative Office of the United States Courts relating to the judge to whom the case had been assigned, showing for 1973, 1974 and the first quarter of 1975 the number of civil and of criminal trials he had conducted and the days he had spent in civil and in criminal trials. In making his decision the judge undoubtedly was familiar with the docket congestion in the district—he had just been assigned the case because of that very congestion. But he did not consider the state of the docket to be compelling.[3] Certainly we cannot say that the district judge was required to treat the state of the docket as a compelling factor, or that he lacked discretion to consider and give appropriate weight to the many other factors in the situation, including the statistical data from the Administrative Office.

In *U. S. v. Clendening*, 526 F.2d 842 (CA5, 1976), we overturned a Rule 50(b) dismissal order entered by the same judge who entered the order in the present case. In *Clendening* we concluded that the judge was of the erroneous view that he had no

---

18 U.S.C. §§ 371 and 1006. A superseding indictment was returned May 14, 1973. Charges against Collins were dismissed by the government. Defendant Novelli jumped bond and was at large when the judge dismissed the other indictments; the indictment against Novelli was not dismissed. Defendant Lambert died pending this appeal, and this court entered an order that as to him the appeal was dismissed as moot.

**3.** The state of the docket in this district was the reason for denying dismissal in *Rodriguez*, where the elapsed time from arraignment to trial was 169 days.

discretion in the matter and that *Rodriguez* compelled him to dismiss. There the elapsed time was two years and seven months, but one year of this was before the plan came into effect. A considerable part of the elapsed time was attributable to three continuances secured by the defendant (one of them over government objection), and, because of the crowded docket, there were attendant difficulties in resetting the case. Another delay was caused by defendant's taking two and one-half months to file a brief. No such elements are shown to be present here.

The government asks us to hold that a judge has no authority under any circumstances to order a dismissal with prejudice for noncompliance with a Rule 50(b) plan. Coupled with this is an argument that any dismissal with prejudice is an abuse of discretion if there is no constitutional violation. Neither position is sound. The only permissible remedy for violation of the Sixth Amendment right to speedy trial is dismissal with prejudice. *Strunk v. U. S.*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973). In *U. S. v. Dyson*, 469 F.2d 735 (CA5, 1972), this circuit discussed the concept of statutory standards for speedy trial more stringent than those imposed by the constitution. The Rule 50(b) plans, promulgated pursuant to the rule-making power of the Supreme Court, are just such a more strict means. The plan is a broader safeguard of the public interest in effective functioning of the criminal justice system than is the Sixth Amendment. *Rodriguez*, 497 F.2d at 175. It requires a broader calculus than the constitutional standard, which is "only a beginning in determining whether non-compliance with the Plan's time limits requires dismissal of an indictment." *Id.* It would be anomalous to hold that under the 50(b) structure—intended to

be more sweeping than a constitutional approach—the available remedy, as a matter of law, must be a weaker remedy than that available under the less stringent Sixth Amendment approach. Looking at the language of the plan itself, ¶ 4, "Effect of Noncompliance with Time Limits," provides that the court may order the U.S. Attorney to show justification for failure to bring a defendant to trial within the prescribed time (here 90 days from arraignment), and then concludes

> [t]he Court may take *such other action as it deems appropriate* for failure to comply with maximum time limits under this Plan, *including, but not limited to,* dismissal of the action for unnecessary delay as provided in Rule 48 of the Federal Rules of Criminal Procedure.

The italicized language does not purport to limit the court to dismissals without prejudice.[4] In addition, the "including but not limited to" language would be surplusage if the power of the court were not broader than its power under Rule 48(b). Under that rule the court must dismiss with prejudice for a constitutional violation. Rule 48(b)—like a 50(b) plan—is more stringent than the constitutional approach and is not confined to constitutional violations but also embraces the inherent power of the court to dismiss for want of prosecution. 3 Wright, Federal Practice and Procedure (Criminal) § 814, pp. 318–19. Inarguably the power of the court under 48(b) includes at least a power to dismiss without prejudice because of delay not rising to the level of a constitutional violation. Arguably 48(b) authorizes dismissal with prejudice for such a delay. But whatever the limits of a 48(b) dismissal for delay on nonconstitutional grounds, we know the remedy available under 50(b) is broader than that permitted by 48(b). The plan says so.[5]

---

4. The dismissal in *Clendening* was with prejudice. The decision did not rest on the ground that the judge had no discretion to enter a "with prejudice" order but on the ground that he had discretion *not* to dismiss and mistakenly thought he had no such discretion.

5. One of the major precursors of the Rule 50(b) structure was the Standards Relative to Speedy

Trial of the American Bar Association Project on Minimum Standards for Criminal Justice, approved by the House of Delegates in 1968. It recommended as the only effective remedy for trial delay a dismissal with prejudice. *Id.* § 4. The 50(b) plan permits the judge to be less stringent than that. It does not command him to be less stringent.

We reject the argument that before the judge could dismiss the indictment he was required to conduct a more formal evidentiary hearing than the conference he held in chambers. This was a fuller inquiry than was held sufficient in *U. S. v. Strunk*, 467 F.2d 969 (CA7, 1972), *rev'd on other grounds*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

We cannot pass over without comment this statement of the government in its reply brief:

> The issue is thus resolved to whether this Court is ready to pardon these appellees for their offenses, as did the trial court below. . . .

If there is failure to abide by the plan, the trial judge to whom the case is assigned must impose what he considers to be the "appropriate" sanction. In his discretion he may conclude as he did in this case, that dismissal with prejudice is appropriate. Characterizing this discharge of duty by the trial judge, and our duty as appellate judges reviewing his order, as the granting of a "pardon" is inaccurate and irresponsible. This language should not be repeated.

AFFIRMED.