**GOVERNMENT OF the VIRGIN ISLANDS ex rel. Jackson ROBINSON, Petitioner,**

v.

**Roy L. SCHNEIDER, in his official capacity as Governor of the Virgin Islands, Alva A. Swan in his capacity as acting Attorney General of the Virgin Islands, Viola Lafong, in her capacity as the Warden of the Bureau of Corrections and Kurt Walcott in his capacity as the acting Director of the Bureau of Corrections, Respondents.**

Civ. No. 1994–0168.

District Court, Virgin Islands, D. St. Thomas and St. John.

April 19, 1995.

---

Stephen A. Brusch, Asst. Federal Public Defender, St. Thomas, VI, for petitioner.

Queen Terry, Asst. Atty. Gen., Virgin Islands Dept. of Justice, St. Thomas, VI, for respondents.

### MEMORANDUM

MOORE, Chief Judge.

This case illustrates the anomalies that develop at the intersection of the single sovereign doctrine, the double jeopardy clause, and the Speedy Trial Act.[1] Because we find that the reprosecution of petitioner by the Government of the Virgin Islands ("government") is fundamentally unfair and severely prejudicial to the defendant, we will amend our earlier Order of September 22, 1994 to dismiss this case with prejudice nunc pro tunc.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

Jackson Robinson struck Sedley Joseph about the head with a two-by-four during an altercation on March 10, 1993. Joseph died in the St. Thomas Hospital twenty-four days later. On April 8, 1993, the United States of America and the Government of the Virgin Islands filed a superseding indictment in this Court charging petitioner with first degree murder for the killing of Sedley Joseph.[3] After a trial, the jury acquitted Robinson of first degree murder and the lesser included offense of murder in the second degree but found him guilty of voluntary manslaughter. On July 19, 1994, after ruling that the trial court committed reversible error by failing to instruct the jury on the defense of self defense, the U.S. Court of Appeals for the Third Circuit reversed and remanded the case to this Court for a new trial. *Government of Virgin Islands v. Robinson,* 29 F.3d 878, 884 (3d Cir.1994).

On September 20, 1994, sixty-two days after the appellate mandate issued, the government moved to dismiss the case against petitioner on the ground that "further prosecution in this matter would not be in the best interest of justice." Motion to Dismiss of September 20, 1994. Because of this language, the government's delay in retrying petitioner, and the decision of the Court of Appeals on the issue of self-defense, we interpreted this motion as an indication that the government no longer intended to prosecute Robinson and dismissed the superseding indictment without prejudice on September 22, 1994. In retrospect, we conclude that it was improvident not to give the defendant an opportunity to argue then, as he does here, that the indictment should have been dismissed with prejudice. Two months later, the government filed an information in the Territorial Court charging Robinson again with first degree murder for the killing of Sedley Joseph, the very charge for which he was acquitted in this Court. Information of November 16, 1994. The language of this information is virtually identical to that of the superseding indictment that this Court had dismissed only two months before. Rob-

---

1. 18 U.S.C. §§ 3161–3174. Although the Speedy Trial Act does not apply of its own force to territorial offenses tried in this Court, it has been extended to those offenses by virtue of this Court's Speedy Trial Plan, *see* note 2 *infra. See Government of Virgin Islands v. Bryan,* 818 F.2d 1069 (3d Cir.1987) and Discussion section *infra.*

2. As discussed more fully *infra,* the government's actions in this case also had the effect of circumventing the Court's Speedy Trial Plan. *See* District Court of the Virgin Islands, Speedy Trial Act of 1974, Plan for the Disposition of Criminal Cases (June 1980) ("Plan").

3. Although Robinson also was charged with the federal offense of falsely representing a social security number in violation of 42 U.S.C. § 408(a)(7)(B), the Court dismissed this count at the close of the government's case in chief.

inson was arraigned in the Territorial Court the following day, November 17, 1994.

Acting *pro se*, Robinson filed this *habeas corpus* petition in this Court[4] charging that the information filed in the Territorial Court violated the double jeopardy clause of the Fifth Amendment, Rule 48 of the Federal Rules of Criminal Procedure, and the Speedy Trial Plan of this Court. Robinson also argued that he could not be reprosecuted, consistent with the Constitution, in the different forum chosen by the government, even for voluntary manslaughter.[5] By order dated November 30, 1994, this Court appointed counsel for Robinson and set a briefing schedule mandating that both parties file a brief in support of their respective positions. Petitioner complied with the Court's Order; the government did not. In fact, the government has yet to answer or otherwise respond to Robinson's petition or to articulate its reasons for reprosecuting petitioner.[6]

In the parallel proceeding in the Territorial Court, meanwhile, the government amended its information on December 27, 1994 to charge petitioner with voluntary manslaughter instead of first degree murder. This action mooted those portions of Robinson's *habeas* petition challenging his reprosecution for first degree murder. But his speedy trial and procedural attacks survived. The Territorial Court ruled on January 5, 1995, that the government could retry Robinson for voluntary manslaughter. *Government of Virgin Islands v. Robinson*, Crim. No. F344/1994 (Terr.Ct.St.T. January 5, 1995) (order denying motion to dismiss).[7] Although the Territorial Court's ruling and the government's earlier amendment of its information materially affected Robinson's *habeas corpus* petition in this Court, the government did not inform the Court of these changed circumstances. In fact, the Court did not learn of these developments until the government appeared at the January 20, 1995 hearing on Robinson's petition. As a result, the Court needlessly expended scarce resources on matters that the government had already rendered moot, in part.[8] That same day, this

---

**4.** Even if exhaustion of territorial remedies were normally required, the chronology of events in this case, with their potential for double jeopardy and speedy trial violations, justify pre-exhaustion federal habeas relief. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Moore v. DeYoung*, 515 F.2d 437, 446 (3d Cir.1975). Where, as here, petitioner alleges a double jeopardy violation, the Court may afford him special consideration, otherwise he may have to undergo the rigors of a second trial to vindicate his claim that the territory can no longer bring him to trial. *See DeYoung*, 515 F.2d at 446; *United States v. Lansdown*, 460 F.2d 164, 171 (4th Cir.1972).

**5.** Because Robinson's case was tried in this Court and because he argues that his District Court case should have been dismissed with prejudice, we will also treat his *habeas corpus* petition as a motion to modify the Court's September 22, 1994 Order of Dismissal. Although the FEDERAL RULES OF CRIMINAL PROCEDURE make no provision for modifying an order, Rule 57 provides: "In all cases not provided for by rule, the district judges and magistrate judges may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act." FED.R.CRIM.P. 57. The general rule, at common law, in civil and criminal cases was that judgments and orders could be modified, vacated, or set aside by the issuing court at any time during the term that they were made. *United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931). As the Ninth Circuit has observed, the Federal Rules "[did] not affect, inter-fere with, or curtail the common-law power of the federal courts, but ... the broad power, which was theirs by the common law, to deal with situations where relief should be granted from manifest error, remained inherent in the courts." *Bucy v. Nevada Constr. Co.*, 125 F.2d 213, 217 (9th Cir.1942).

**6.** Because the government has failed to comply with the briefing schedule established in this case, the Court would be justified in treating Robinson's petition as conceded by the government.

**7.** It would appear that the government did not inform the Territorial Court of the grounds for its September 20, 1994 motion to dismiss filed in this Court on its behalf by the United States Attorney. Accordingly, the Territorial Court did not have occasion to address the propriety and manner of the government's reprosecution of petitioner on the manslaughter charge.

**8.** At the hearing, the Assistant Attorney General attempted to excuse the government's conduct by explaining that she was assigned to the case only the day before the hearing. This refrain has become far too familiar from the Department of Justice. The Court is at a loss to comprehend why the Department of Justice encounters such great difficulty filing pleadings on time or preparing, adequately, for its court appearances. Whether or not the Court might be inclined to countenance such lapses, justice is far less forbearing.

Court issued an order amending its Order of September 22, 1994 and dismissing the District Court case against Robinson with prejudice. *See* Order of January 20, 1995. This Memorandum amplifies that order.

## DISCUSSION

■ A federal criminal prosecution must comport with four essential canons: the Constitution,[9] statutes of Congress, the Federal Rules of Criminal Procedure, and the local rules and plans adopted by the court. In addition, courts have inherent power to "promote efficiency in their courtrooms and achieve justice in their results." *Eash v. Riggins Trucking, Inc.,* 757 F.2d 557, 564 (3d Cir.1985). These inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). The essential canons operate in concert with a court's inherent powers toward a single end: the efficient administration of justice. Together they form a phalanx that safeguards not only the rights of the accused but the ends of justice as well.

■ In the case of reprosecution, the Revised Organic Act, which incorporates the double jeopardy clause of the Fifth Amendment, guarantees that no person shall "be twice put in jeopardy of punishment." Revised Organic Act § 3; 48 U.S.C. § 1561. Once jeopardy attaches, this clause protects criminal defendants in three ways: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *see also Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.

306 (1932); *United States v. Bruney,* 866 F.Supp. 874 (D.V.I.1994). Where, as here, the defendant successfully appeals his conviction, retrial is permitted only on the charges for which he was convicted and not on any offense for which he was acquitted at the first trial. *See Price v. Georgia,* 398 U.S. 323, 329, 90 S.Ct. 1757, 1761, 26 L.Ed.2d 300 (1970).

■ The Supreme Court has long held that the double jeopardy clause allows federal and state governments to bring successive prosecutions for offenses arising out of the same criminal act. *Abbate v. United States,* 359 U.S. 187, 195, 79 S.Ct. 666, 671, 3 L.Ed.2d 729 (1959). Conceptually, one who commits a criminal act in a state of the union may offend two sovereigns, the sovereign state in which the act was committed, *e.g.* New York, and the United States government, both of which may punish the criminal act. This rule of law is commonly referred to as the dual sovereign doctrine. The doctrine is not applicable in the Virgin Islands, however, because, as an unincorporated territory of the United States, the Virgin Islands has no inherent or independent sovereign power.

> [I]n a federal Territory and the Nation, as in a city and a State, '[t]here is but one system of government, or of laws operating within [its] limits.' City and State, or Territory and Nation, are not two separate sovereigns to whom the citizen owes separate allegiance in any meaningful sense, but one alone.

*United States v. Wheeler,* 435 U.S. 313, 321, 98 S.Ct. 1079, 1085, 55 L.Ed.2d 303 (1978) (citation omitted). The Eleventh Circuit has recently expounded on the dual sovereign/single sovereign dichotomy in a manner that we find persuasive:

> Punitive authority in a territory of the United States flows directly from [Congress'] plenary power [under Article IV,

9. Because of the nature of the protections afforded by the Fifth and Sixth Amendments, these constitutional provisions apply of their own force to criminal prosecutions in the Virgin Islands. *Soto v. United States,* 273 F. 628, 634–35 (3d Cir.1921). In addition, Congress has extended these and other provisions of the United States

Constitution to the Virgin Islands through the Revised Organic Act. Revised Organic Act of 1954, ch. 558, § 3, 68 Stat. 497 (1954), *amended by* Pub.L. 90–496, § 11 (1968) (codified as amended at 48 U.S.C. § 1561) ("Revised Organic Act").

§ 3 of the Constitution]. Every exercise of authority in a territory which does not proceed under a direct Congressional enactment proceeds, at least, at the sufferance of the Congress, which may override disfavored rules or institutions at will. **The United States Congress is the source of prosecutorial authority for both the courts of United States territories and the federal district courts. Therefore ... prosecutions in territorial courts are not protected by the dual sovereignty doctrine from application of the Double Jeopardy Clause.** *United States v. Sanchez,* 992 F.2d, 1143, 1150 (11th Cir.) (emphasis added) (footnote omitted), *modified,* 3 F.3d 366 (11th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1051, 127 L.Ed.2d 373 (1994).

Over the course of 78 years, Congress has conferred increasingly greater degrees of autonomy on the unincorporated Territory of the Virgin Islands. Moreover, for administrative purposes, Congress has chosen to treat the Virgin Islands as a separate "sovereign." Thus, the Territorial Court is treated as a state court for purposes of removal, and it has original jurisdiction over purely local civil actions and over all criminal offenses proscribed by the Virgin Islands Code.[10] Yet, the Constitution places limits on Congress' power over the territories.

Certain "fundamental rights" automatically extend to the residents of any "Territory ... belonging to the United States,"[11] such as the unincorporated Territory of the Virgin Islands.[12] *See Downes v. Bidwell,* 182 U.S. 244, 276–77, 21 S.Ct. 770, 783, 45 L.Ed. 1088 (1901); *Balzac v. People of Porto Rico,* 258 U.S. 298, 312–13, 42 S.Ct. 343, 348, 66 L.Ed. 627 (1922); *Dorr v. United States,* 195 U.S. 138, 146–47, 24 S.Ct. 808, 812, 49 L.Ed. 128 (1904). The double jeopardy protection of the Fifth Amendment is one of these fundamental rights, *see Balzac supra,* and applies *ex proprio vigore* to all prosecutions in the Virgin Islands, *Soto,* 273 F. at 634–35. Thus, the status of the Virgin Islands as an unin-corporated territory of the United States adds an additional facet to the double jeopardy analysis. The Fifth Amendment circumscribes Congress' ability to treat the Government of the Virgin Islands as a separate "sovereign" in criminal matters, pursuant to its authority under Article IV of the Constitution to "make all needful Rules and Regulations respecting" the Territory.[13]

Consequently, the double jeopardy clause forbids successive prosecutions in a federal and territorial court for the same criminal act. *Grafton v. United States,* 206 U.S. 333, 354–55, 27 S.Ct. 749, 755, 51 L.Ed. 1084 (1907); *see also Puerto Rico v. Shell,* 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235 (1937) (approving the holding in *Grafton*). By the same token, a criminal defendant may not receive separate punishments for similar federal and territorial offenses. *Government of Virgin Islands v. Dowling,* 633 F.2d 660, 669 (3d Cir.1980); *Government of Virgin Islands v. Brathwaite,* 782 F.2d 399, 406–08 (3d Cir.1986). Since the "single sovereign" in the Virgin Islands is allowed only one bite of the apple—whether acting as the United States or the Government of the Virgin Islands—it behooves the federal and territorial prosecutors to work in concert when bringing charges against criminal defendants.

As noted, certain constitutional protections, considered fundamental rights under our system of justice, apply to all criminal defendants in the Virgin Islands, whether they are tried in the Territorial Court or this Court. The same does not hold true for Congressional statutes. Even though there is only one true sovereign in the Virgin Islands, Congress has chosen to delegate much of the authority to prosecute what are traditionally considered state or local offenses to the Virgin Islands Legislature which, in turn, has vested the Territorial Court with primary, original jurisdiction over such purely local crimes. Therefore, in the Virgin Islands there are two tiers of criminal prosecu-

---

**10.** Revised Organic Act §§ 21, 23 (codified as amended at 48 U.S.C. §§ 1611, 1613).

**11.** U.S. CONST. art. IV, § 3, cl. 2.

**12.** Revised Organic Act § 2 (codified as amended at 48 U.S.C. § 1541(a)).

**13.** *See supra* note 11.

tion, federal and territorial. Since this Court has the criminal jurisdiction of a United States District Court, 48 U.S.C. § 1612(a), certain federal statutory protections such as the Jencks Act [14] and the Speedy Trial Act apply to all criminal trial proceedings in this Court, including prosecutions in this Court of Virgin Islands Code offenses. *Government of Virgin Islands v. Bryan*, 818 F.2d 1069, 1074 (3d Cir.1987); *see Government of Virgin Islands v. Lovell*, 378 F.2d 799, 805 (3d Cir.1967) (extending the Jencks Act to territorial offenses tried in this Court).

■ Because Congress has ascribed certain attributes of statehood to the Government of the Virgin Islands,[15] however, these federal statutes do not apply **of their own force** to criminal proceedings in the Territorial Court. Just as in a state, our local Legislature need not adopt the provisions of these federal statutes. As a result, a criminal defendant in the Territorial Court, just as a state court defendant, may be accorded fewer statutory protections than are ordinarily available under the federal jurisdiction of this Court. But at least two crucial factors distinguish prosecutions in the Territorial Court from those in state courts. First, the Congress of the United States is the ultimate source of all authority to prosecute in the Territory, whether for Virgin Islands Code offenses in the Territorial Court, or for federal crimes in this Court. *See Sanchez*, 992 F.2d at 1150. Thus, we cannot completely segregate the actions of the federal and territorial prosecutors. Second, the statutory protections afforded the defendant in the Territorial Court and this Court vary for identical Virgin Islands Code crimes. A defendant tried in this Court for a violation of the local firearms statute, for instance, has the benefit of the Speedy Trial Act and the Jencks Act. That same defendant tried in the Territorial Court for the very same V.I.

firearms offense does not receive this benefit. In essence, the degree of statutory protection afforded a defendant charged with a territorial offense varies considerably depending on the government's choice of forum. Since territorial offenses may still occasionally be prosecuted in this Court,[16] federal and territorial prosecutors must work together to avoid the potential for unfair manipulation.

■ Nowhere is the potential for manipulation more evident than in the speedy trial context. The Plan adopted by this Court places strict limits on the amount of time that the prosecution has to bring its case to trial. It applies to all offenses tried in this Court, whether federal or territorial. *See Bryan* 818 F.2d at 1074–75. Failure to comply with the established deadlines may result in release of the accused from custody or dismissal of the charges. Significantly, the threshold for violation of the Plan is much lower than that for a violation of the constitutional right to a speedy trial under the Sixth Amendment. Prosecutorial delay need not rise to constitutional dimensions to warrant sanctions under the Court's Plan. *Id.* at 1073; *United States v. Novelli*, 544 F.2d 800, 803 (5th Cir.1977); *United States v. Furey*, 514 F.2d 1098, 1103–04 (2d Cir.1975). By contrast, neither the Speedy Trial Act nor the Plan adopted by this Court has been applied in the Territorial Court. *See, e.g., Government of Virgin Islands v. Quetel*, 18 V.I. 145, 148–49 (Terr.Ct.1982); *Government of Virgin Islands ex rel. Marvin A.*, 17 V.I. 102, 104–05 (Terr.Ct.1980). Because of these differences, where the speedy trial clock is about to run, the Government of the Virgin Islands (represented by the U.S. Attorney) can dismiss a criminal case in this Court. The same Government of the Virgin Islands may then reprosecute the accused in the Territorial Court (represented by the V.I.

---

**14.** 18 U.S.C. § 3500.

**15.** *See In re Estate of Hooper*, 359 F.2d 569, 578 (3d Cir.), *cert. denied*, 385 U.S. 903, 87 S.Ct. 206, 17 L.Ed.2d 133 (1966).

**16.** A cluster of acts may violate both federal and territorial law. For example, one who robs a bank with an unlicensed firearm may be charged with violating the Federal Bank Robbery Act, 18 U.S.C. § 2113, and the Virgin Islands firearms

statute, V.I.Code Ann. tit. 14, § 2253 (1967 & Supp.1994). *See, e.g., Dowling*, 633 F.2d at 663–64. By practice, the federal and territorial charges are consolidated and tried simultaneously in this Court. Consequently, although the Territorial Court assumed primary, original jurisdiction over all V.I.Code crimes on January 1, 1994, hybrid federal/territorial criminal cases are still tried in this Court.

Department of Justice), thereby circumventing the Plan and extending the time otherwise available for prosecution.

■ This is precisely what happened in this case. This Court's Plan requires that retrial of a defendant following a successful appeal "commence within 70 days from the date the order occasioning the retrial becomes final. . . ." Plan, Ch. II, ¶ 4(b) at II–4. Barring any excludable delay, therefore, the government had only a few days left to bring Robinson to trial when it moved to dismiss its case in this Court. By dismissing the case against Robinson here and refiling the same charges against him in the Territorial Court, the government was able to circumvent the sanctions mandated by the Plan and substantially extend the time available to try Robinson.[17] The government's actions also had the incidental effect of depriving Robinson of the panoply of other statutory rights available to him in this Court.

■ In our view, the government's actions in this case were fundamentally unfair and inconsistent with our notions of fair play and substantial justice. Moreover, they unduly prejudiced Robinson. Certain statutory protections attach when a criminal defendant is brought before this Court to answer for territorial offenses; the government may not arbitrarily strip them away by dismissing and refiling the same charges for identical offenses in another forum. In a strict legal sense, the double jeopardy clause did not bar Robinson's reprosecution for voluntary manslaughter following his successful appeal of his conviction for that crime in this Court. *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 308, 104 S.Ct. 1805, 1813, 80 L.Ed.2d 311 (1984) (holding that double jeopardy clause "does not bar reprosecution of a defendant whose conviction is overturned on appeal"). In fact, that is precisely what the Third Circuit's mandate allowed. By its conduct, however, the government may forfeit

that which is ordinarily permissible. Where the government's delay in reprosecuting a defendant violates the Court's Speedy Trial Plan, the Court may dismiss the indictment with prejudice, even though the government's conduct does not rise to constitutional dimension. *See Furey,* 514 F.2d at 1104. Under these circumstances, the Court uses its inherent powers not as a sanction, but as a means of ensuring a just outcome. Absent compelling reasons, then, once the government has availed itself of the benefits of this forum **and the case has progressed to trial,** it may not arbitrarily divest the defendant of the rights that accrue in this Court by dismissing the case here and refiling the same charges for the same offenses in the Territorial Court.

This rule is compelled by the nature of the federal-territorial relationship. Since the territorial and federal prosecutors are but separate arms of the same sovereign,[18] the actions of one arm necessarily affect that of the other. The transfer of local criminal jurisdiction to the Territorial Court did not "vitiate the essential character" of this relationship. *Goode v. Markley,* 603 F.2d 973, 976 (D.C.Cir.1979) (describing the relationship between the District of Columbia and the United States), *cert. denied,* 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980). The government may not pass the defendant to the left arm when the right arm is about to be shackled. To do so would frustrate the rules of this Court and the decisions of the Third Circuit that have extended substantive statutory protections to **all** criminal defendants tried in this Court.

■ Whether the government should be able to reprosecute in the Territorial Court after a voluntary dismissal in this Court[19] must be decided on a case by case basis and depends on such factors as the stage at which the dismissal took place, the stated

---

17. Under the Plan, dismissal by the government does not create a new 70–day clock; it merely suspends the ticking of the old one until the government resumes its case. Plan, Ch. II, ¶ 4(d)(3).

18. *Waller v. Florida,* 397 U.S. 387, 393, 90 S.Ct. 1184, 1188, 25 L.Ed.2d 435 (1970).

19. *See Government of Virgin Islands v. Colburne,* Crim. No. F185/1994, V.I.BBS 94CRF185.TT1 (Terr.Ct.St.T. November __, 1994) (holding that Territorial Court has jurisdiction to try cases, originally **filed** in the District Court, involving criminal acts committed before the transfer of jurisdiction).

reasons for the dismissal, the prejudice to the defendant, and whether the Speedy Trial Plan or another safeguard afforded the defendant in this Court threatened the government with dismissal or some other sanction. As a practical matter, the cases that present this problem will be few, since the hybrid federal/territorial criminal prosecution in this Court will be rare. But where the government's conduct will bring about an unjust result, courts are obligated to use their inherent powers to intercede, even in the rare case.

Here the government's dismissal came after it had already tried Robinson and after he had successfully appealed his conviction. Also, the government's stated purpose for its motion to dismiss was that further prosecution of Robinson *would not be in the "interest of justice."* There was no temporal qualification attached to this statement; the government did not say that further prosecution was inadvisable **at this time.** Its unqualified statement led the Court and defendant reasonably to infer that there would be no further prosecution for the March 10, 1993 incident. The government has yet to explain how, in the space of two months, the interest of justice so drastically changed. A third factor weighing against the government is the shortage of time that remained on the speedy trial clock. Given its ability to request an extension or transfer, the government's dismissal of the indictment in this Court and refiling of the same charges against Robinson in the Territorial Court suggests that there were no legitimate reasons for the delay.

Under the Speedy Trial Plan, the Court may dismiss an indictment or information with prejudice for a violation [20] after considering three factors: the seriousness of the offense charged; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the Speed Trial Act and on the administration of justice. *See* 18 U.S.C. § 3162(a)(1); *Bryan,* 818 F.2d at 1076. No single factor is dispositive. The appropriate inquiry is whether the factors, considered as a whole, permit dismissal with prejudice.

The decision rests in the sound discretion of the trial court. *See United States v. Taylor,* 487 U.S. 326, 334, 108 S.Ct. 2413, 2418, 101 L.Ed.2d 297 (1988). In our view, dismissal with prejudice is warranted in this case. While the offense for which Robinson is charged—voluntary manslaughter—is indeed serious, this factor is outweighed by the circumstances of this case and the deleterious impact that reprosecution in the Territorial Court would have on the administration of the Plan and of justice. We have already discussed these last two factors in detail; however, we wish to emphasize that the impact of the government's choice of forum on the protections afforded the accused can be harsh, as this case illustrates. Were the government free to switch forums with impunity, it would be able to undermine the objective of the Plan and arbitrarily remove the statutorily-created hedge surrounding criminal defendants in this Court.

Rule 48(a) of the Federal Rules of Criminal Procedure provides an alternative basis for our decision to dismiss Robinson's previous indictment with prejudice. Rule 48(a) requires the government attorney to dismiss an indictment "by leave of court." "The primary purpose of this requirement is 'to prevent harassment of a defendant by charging, dismissing and recharging without placing a defendant in jeopardy.'" *United States v. Welborn,* 849 F.2d 980, 983 (5th Cir.1988); *see also United States v. Derr,* 726 F.2d 617, 619 (10th Cir.1984). Where the motion is uncontested, the court should presume that the prosecutor is acting in good faith and dismiss the indictment without prejudice. *Welborn,* 849 F.2d at 983. Although the government is not required to state fully the reasons for its dismissal contemporaneously with a Rule 48(a) motion, its failure to do so entitles the defendant to dismissal with prejudice if he can show (1) that the initial dismissal was in bad faith or (2) that he "has been prejudiced in his ability to attack the prosecutor's motives due to the trial court's failure to require submission of adequate reasons before dismissing the ... indictment." *Id.* at 984; *United States v. Dyal,* 868 F.2d 424, 428 (11th Cir.1989). As

---

**20.** The Speedy Trial Act's sanctions have been    incorporated into the Plan.

discussed *supra*, in this case, the government offered only a conclusory statement that failed adequately to state the reasons for its dismissal. Also, the Court's failure to give Robinson an opportunity to be heard on the government's Rule 48(a) motion prejudiced his ability to attack the prosecutor's motives. Here, the government filed its Rule 48(a) motion on September 22, 1994, and the Court granted it two days later, before the defendant had an opportunity to respond.

*Derr* is particularly instructive in this regard. There, as here, the prosecutor moved to dismiss the indictment without prejudice, offering only an "ends of justice" rationale for its decision. The trial court granted the government's motion without giving the defendant an opportunity to be heard. After his reindictment for the same criminal conduct, the defendant moved to dismiss the case with prejudice, arguing that the trial court erred in dismissing his first indictment because the government failed to submit any reasons for its dismissal. The trial court agreed and granted the defendant's motion after it determined that it had abused its discretion by not inquiring into the reasons for the government's dismissal. The appellate court affirmed that decision. The rationale of *Derr*, *Welborn*, and *Dyal* is clearly applicable to this case an offers added support to our decision to dismiss the original indictment against Robinson with prejudice.

As a final matter, the Court is appalled at the Department of Justice's lack of courtesy in failing to inform the Court and Mr. Stephen Brusch, defendant's appointed counsel, of its actions in the Territorial Court which directly affected this case. Although the Court considered sanctioning the Department of Justice, it will not do so *sua sponte*.[21] However, the Court will entertain a motion from counsel for Robinson in this regard, should he so desire.

## CONCLUSION

In conclusion, we wish to emphasize the narrowness of our holding. Our decision to amend our earlier dismissal to make it with prejudice is governed principally by the egregious facts of this case, which we trust will not be repeated. Absent the unusual circumstances presented by Robinson's petition, we would have no occasion to hear this case, since prisoners being held under the process of the Territorial Court should first exhaust their territorial remedies in that Court before filing a *habeas* petition here. Accordingly, the remedy that we fashion here is suitable only for that rare case which justifies pre-exhaustion federal *habeas* relief.[22] The following caveat is especially *apropos* in this regard: "What makes for health as an occasional medicine would be disastrous as a daily diet." *United States v. Dougherty*, 473 F.2d 1113, 1136 (D.C.Cir.1972) (Leventhal, J.).

**21.** Courts have inherent power to impose sanctions against litigants in order to "vindicat[e] [their] judicial authority and to mak[e] the prevailing party whole for expenses caused by an opponent's obstinacy." *Chambers*, 501 U.S. at 46, 111 S.Ct. at 2133. This power is "both broader and narrower than other means of imposing sanctions ... and extends to a full range of litigation abuses." *Id.*

**22.** *See supra* note 4.