**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**GUSTAVO DIAZ, Defendant**
**GOVERNMENT OF THE VIRGIN ISLANDS Plaintiff**
**v.**
**LUIS FERNANDO LLONA, Defendant**
**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**CLAUDIO DANIEL COTO, Defendant**
**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff,**
**v.**
**JORGE D. GONZALEZ, Defendant**

Crim. Nos. F60/98 & F77/98, F61/98 & F78/98, F62/98 & F79/98, F63/98 & F80/98

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

September 3, 1998

DOUGLAS SPROTTE, ESQ., Assistant Attorney General V.I. Department of the Justice, St. Thomas, V.I., *for plaintiff*

110

STEPHEN BRUSCH, ESQ. and Derek M. Hodge, Esq., Dudley, Topper and Feuerzeig, Derek M. Hodge, P.C. St. Thomas, V.I., *for defendants*

HODGE, *Presiding Judge*

## MEMORANDUM OPINION

## I. INTRODUCTION

The question presented by Defendant Diaz' Motion to Dismiss is whether the plaintiff engaged in prosecutorial vindictiveness when it circumvented the bail release order of the local Territorial Court by enlisting the assistance of the U.S. Attorney's Office to file identical charges against the defendants in the federal District Court for the sole purpose of detaining the defendants. For the reasons stated herein, the Court answers the question in the affirmative and therefore grants the motion to dismiss, with prejudice.

## II. THE FACTS

On January 29, 1998, agents for the Office of the Attorney General arrested defendants Gustavo Diaz, Luis Fernando Llona, and Claudio Daniel Coto for credit card fraud. On January 30, 1998, the Government filed a Probable Cause Affidavit in the Territorial Court against the defendants, alleging that they violated various local statutes.

The Court found probable cause, advised the defendants of their rights, and in addition to various conditions set bail for defendant Diaz in the sum of $50,000.00, for defendant Coto in the sum of $35,000.00, and for defendant Llona in the sum of $25,000.00. The defendants could not immediately post bail and, therefore, remained incarcerated.

On January 30, 1998, the Government arrested Jorge Gonzalez, alleging his involvement in the credit card fraud with the other defendants, in violation of territorial statutes.

On February 2, 1998, the Government filed in the Territorial Court, a Second Probable Cause Affidavit repeating the allegations of the first Probable Cause Affidavit and adding allegations against defendant Gonzalez. On that date, the Court found probable cause to detain defendant Gonzales, advised him of his rights, and set

release conditions and bail in the sum of $10,000.00. Defendant Gonzalez, unable to post the $10,000.00 bail, also remained incarcerated. On February 11, 1998, the Government filed a Third Probable Cause Affidavit, in support of an Information filed on that date, in the Territorial Court against all of the defendants. The Information charged various counts against the defendants.

On February 11, 1998, the defendants filed a motion seeking reduction of the cash bail, or a posting of ten percent (10%) of the cash bail. On February 13, 1998, the plaintiff filed an opposition to the motion for reduction of bail, arguing that the existing cash bail should be maintained.

On February 18, 1998, the Government filed a Fourth Probable Cause Affidavit in the Territorial Court in support of a Second Information filed against all of the defendants. The Second Information charged an additional 27 Counts against the defendants arising out of the original allegations of credit card fraud.

Thus, Defendant Diaz was charged with Fraudulent Use of a Credit Card in violation of 14 V.I.C. § 3004 [Counts I, II, IV, V, & VIII], Buying, Receiving or Possessing Stolen Property in violation of 14 V.I.C. § 2101 [Counts III, IX, & XV], and Theft-Obtaining Credit Card through Fraudulent Means in violation of 14 V.I.C. § 3003 [Counts XVIII, XIX, & XX]; Defendant Llono was charged with Fraudulent Use of a Credit Card in violation of 14 V.I.C. § 3004 [Counts VI, VII, XII, XIII, XXXXIII, & XXXXV]; Buying, Receiving or Possessing Stolen Property in violation of 14 V.I.C. § 2101 [Count XIV], Destruction of Evidence in violation of 14 V.I.C. § 1506 [Count XVI], and Theft-Obtaining Credit Card through Fraudulent Means in violation of 14 V.I.C. § 3003 [Counts XXI, XXIII, XXV, XXXII, XXXIII, XXXIV, XXXV, XXXVI, XXXVII, XXXIII, XXXIX, XXXX, XXXXI]; Defendant Coto was charged with Fraudulent Use of a Credit Card in violation of 14 V.I.C. § 3004 [Counts VI & VII]; and Theft-Obtaining Credit Card through Fraudulent Means in violation of 14 V.I.C. § 3003 [Counts XXI, XXVI, XXVII, XXVIII, XXIX, XXXI, XXXII, XXXIII, XXXIV, XXXV, XXXVI, XXXVII, XXXIII, XXXIX, XXXX, & XXXXI]; and Defendant Gonzalez was charged with Fraudulent Use of a Credit Card in violation of 14 V.I.C. § 3004 [Counts IV, V, & X], Buying, Receiving or Possessing Stolen Property in violation of 14 V.I.C. § 2101

[Count XI], and Theft-Obtaining Credit Card through Fraudulent Means in violation of 14 V.I.C. § 3003 [Count XXXXIII].

On Thursday, February 19, 1998, the defendants appeared at arraignment on the First and Second Informations. Defense Counsels argued for a reduction in bail and for the release of the defendants, and the Government again opposed the reduction in bail. Nevertheless, the Court held that pursuant to *Karpouzis v. Government of the Virgin Islands*, D.C. Crim. App. No. 96-257 (App. Div. D.V.I. 1997), bail should be set at a sum the defendants can afford, and indicated that a Release Order would be issued the next day, February 20, 1998, which would include a determination of the sum it believes the defendants can post for bail and other conditions for release. The Court explicitly rejected the condition of electronic monitoring, and made it clear that the charges are not listed among the detainable offenses enumerated in 5 V.I.C. § 3504a(a)(1).

Upon leaving the hearing, the Assistant Attorney General in a colloquy with one of the defendant's attorneys, stated that he will bet that the defendants are not released. He then went to the United States Attorney's Office and discussed ways to circumvent the decision to release the defendants, as he readily admitted at the April 16, 1998 hearing. The Assistant Attorney General, in tandem with the Assistant United States Attorney, read and re-read the Karpouzis decision and came to the conclusion that the Territorial Court's interpretation of Karpouzis was correct. However, both the Assistant Attorney General and the Assistant U.S. Attorney agreed that in order to circumvent the release order to be issued by the Territorial Court, the United States Attorney's Office would have to file federal charges against the defendants, have a federal detainer placed against the defendants, and move in the District Court to detain the defendants.

On February 20, 1998, the Territorial Court, as promised, issued bail release orders reducing each of the defendant's bail to ten percent (10%) of the sum initially set, and releasing the defendants on various conditions. That evening, Defendant Diaz posted Five Thousand Dollars ($5, 000.00) cash bail at the Territorial Court and was refused release by the V.I. Bureau of Corrections due to a federal detainer.

Meanwhile, the United States Attorney filed in the District Court of the Virgin Islands, a Probable Cause Affidavit subscribed and sworn to by Richard Velasquez on February 20, 1998. The affidavit is the same in all material respects as the Fourth Affidavit filed in the Territorial Court on February 18, 1998. Except for the elimination of a non-essential paragraph 12, and the substitution of the phrase "Initial Hearing in Territorial Court" for "Probable Cause hearing," the Velasquez District Court Affidavit is word for word, punctuation for punctuation, sentence for sentence, allegation for allegation identical to Velasquez Territorial Court Fourth Affidavit. *Compare District Court Affidavit of Richard Velazquez, U.S. v. Gustavo Diaz, Jorge Gonzalez, Daniel Coto, and Luis Fernando Llona,* Criminal Nos. 1998-42 & 1998-43, with *Territorial Court Fourth Affidavit of Richard Velazquez, Government of the V.I. v. Gustavo Diaz, sub judice.*

The United States Attorney then used the Velasquez Affidavit to obtain a complaint and an arrest warrant against each of the four defendants. In obtaining the Warrant for Arrest, the United States Attorney requested detention, and the United States Magistrate complied, indicating on the federal warrant for arrest "Detention requested." The United States Marshall then filed a federal detainer against the four defendants with the V.I. Bureau of Corrections.

At a February 27, 1998 preliminary/detention hearing in the District Court, the Assistant United States Attorney continued its motion to have Defendant Diaz detained. However, the United States Magistrate granted Defendant Diaz his release, but required that he be electronically monitored. At a later date, the United States Magistrate issued similar Release Order with regard to the other defendants. While Defendant Diaz and the other defendants had secured lodging at discounted rooms at the Carib Beach Hotel, the Hotel could not use its telephone to permit electronic monitoring; therefore, Defendant Diaz and the other defendants remained incarcerated at the federal correctional facility in Puerto Rico.

On March 6, 1998, Defendant Diaz moved in the Territorial Court to dismiss with prejudice the Informations filed against him. Defendant Diaz argued that the Territorial Court must dismiss the Informations as a remedy for the prosecutor's misconduct and vindictiveness, and to preserve the jurisdictional integrity of the Territorial Court.

114

The Government initially opposed the Motion, by filing an Opposition on or about March 17, 1998. However, on or about April 8, 1998, (erroneously dated March 8, 1998), the Government filed its own Motion to Dismiss the Informations without prejudice.

On April 16, 1998, this matter came on for hearing on Defendant Diaz' Motion to Dismiss. Although the Government admitted that "90 percent of the charges [defendant] alleges are true", it argued that Defendant Diaz' motion was moot due to the Government's motion to dismiss, without prejudice. Defendant Diaz contended that he seeks a dismissal with prejudice, and that the dismissal without prejudice would reward the prosecutor for his misconduct. The Court agreed that the issue was not moot and conducted the hearing as scheduled.

III. THE PARTIES ARGUMENTS

In support of his motion to dismiss, Defendant Diaz stated that the plaintiff utilized the federal court to accomplish its goal of intentionally circumventing the release order of the Territorial Court. Defendant Diaz further stated the territorial government and the federal government are a single sovereign which cannot prosecute the same defendants in the same case in both the District Court and the Territorial Court. Defendant Diaz further stated that the pursuit of charges against the defendants in the District Court in furtherance of a "bet" constitutes prosecutorial vindictiveness, and that therefore the Government violated the defendant's Fifth Amendment right to due process. Thus, Defendant Diaz states that these matters should be dismissed as a remedy for said prosecutorial vindictiveness.

In opposition to the motion, contrary to its admissions, the Government argued that it did not contact the U.S. Attorney's Office because of the pending bail release order. The Government stated that it had contacted the Secret Service on February 2, 1998, the next business day after defendants' arrests, and shared the information with its Puerto Rico office to evaluate the case for federal charges. The Government stated that after the preliminary hearing on February 19, 1998, wherein the Court indicated its intent to release the defendants the following day, the Assistant U.S. Attorney decided to charge the defendants with the federal

charges. The Government further stated that the prosecution did not make a "bet" with defense counsel regarding the release of the defendants and that the exchange between the prosecution and defense counsel was "courthouse banter". The Government also argued that even if the Court finds prosecutorial misconduct, dismissal is not the remedy.

## IV. THE LAW AND ANALYSIS

### A. Double Jeopardy

Defendant Diaz has made indirect allegations of double jeopardy with specific reliance on the single-sovereignty/dual-sovereignty dichotomy as explained by the Eleventh Circuit in *United States v. Sanchez*, 992 F.2d 1143, 1150 (11th Cir. 1993), *modified*, 3 F.3d 366 (11th Cir. 1993), cert. denied, 114 S.Ct. 1051 (1994). However, that legal argument has not been significantly developed in either the facts or the law as to enable this Court to determine such a serious constitutional question. Accordingly, since the defendant's claim of due process violations based on prosecutorial vindictiveness has been properly developed, it will be considered below.

### B. Prosecutorial Vindictiveness

#### 1. Due Process Violation

■ The Due Process Clause of the Fifth Amendment to the United States Constitution prevents a prosecutor from acting vindictively. A prosecutor acts vindictively when he "acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights." *United States v. Meyer*, 810 F. 1242, 1245 (D.C. Cir. 1987) (citing United States v. Goodwin, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488 (1982)). That is, when a prosecutor retaliates against a defendant for the defendant's exercise of his rights, the prosecutor offends due process. "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' " *Id.*, 457 U.S. at 372, 102 S.Ct. at 2488 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668 (1978)).

■ In the instant case, due process of law requires that the prosecutor not retaliate against the defendants for exercising their constitutional and statutory rights to move for a reduction of bail and pretrial release. Pursuant to Title 5 V.I.C. § 3504a, Defendant

116

Diaz and the co-defendants were allowed to file a motion to reduce bail, and to be released on an affordable bail. *See Karpouzis v. Government of the Virgin Islands*, D.C. Crim. App. No. 96-257 (App. Div. D.V.I. 1997). By instigating the filing of federal charges against the defendants for the sole purpose of detaining the defendants after they were being released by the Territorial Court, the Government essentially punished the defendants for exercising their constitutional and statutory rights to reduced bail and to pre-trial release. The unconstitutionality of such prosecutorial misconduct has been established by the U.S. Supreme Court with respect to vindictive sentencing as well as vindictive prosecutions.

The United States Supreme Court in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072 (1969), enunciated the rule against penalizing a defendant for asserting constitutional and statutory rights. In *Pearce*, the defendant was convicted of assault with intent to rape and given a sentence of 12 to 15 years imprisonment. *Id.*, 395 U.S. at 713, 89 S.Ct. at 2074. Several years later, Pearce filed a post-conviction proceeding in which he succeeded in getting his conviction reversed and a new trial ordered. *Id.* Upon retrial, he was again convicted and the judge sentenced him to 8 years which was added to the time he had already spent in jail. *Id.* Thus, Pearce received a longer total sentence after retrial than he had received for his original conviction.

After discussing and dispatching the Double Jeopardy and Equal Protection challenges to Pearce's increased total sentence the Supreme Court addressed the Due Process challenge, stating, *inter alia*:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that the defendant be freed of apprehension of such retaliatory motivation on the part of the sentencing judge.

*Id.*, 395 U.S. at 724, 89 S.Ct. at 2080.

117

In *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098 (1974), the Supreme Court extended the injunction against vindictive sentencing to vindictive prosecutions. In *Perry*, the defendant was convicted in a lower court of a misdemeanor assault and sentenced to six months in prison. Perry exercised his right to a trial de novo in Superior Court by filing a notice of appeal. After Perry filed the notice of appeal, the prosecutor obtained a felony indictment against him. Perry pleaded guilty to the felony and received a sentence of five to seven years in prison. The Supreme Court held that the opportunities for vindictiveness by the prosecutor to obtain a felony indictment because the defendant requested a trial de novo were such "as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case." Vindictiveness has been classified into two categories: actual vindictiveness and presumed vindictiveness. "In general, there are two ways in which a defendant can prove a claim of vindictiveness. First, a defendant may use evidence of a prosecutor's retaliatory motive to prove actual vindictiveness. Second, in certain circumstances, a defendant may show facts sufficient to give rise to a presumption of vindictiveness." *United States v. Paramo*, 998 F.2d 1212, 1220 (3d Cir. 1993) (citing *United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485). In this case, actual vindictiveness was demonstrated by the Assistant Attorney General's admissions at the April 16 hearing:

ATTORNEY SPROTTE: I am going to make Attorney Brus[c]h's [Diaz defense counsel] job very easy . . . . I am going to make his job very easy, because I am going to tell this Court that 90 percent of the charges he alleges are true . . .

. . . Now, I will admit 100% that at the close of this hearing, we went and discussed your ruling with the US Attorney's Office, and we did it because of what you said. I admit that's true. We were working as a team. An important decision came down, and I went and discussed it.

[CHIEF JUDGE HODGE]: When you all met and you discussed, as you discussed that, didn't you all also realize that what I did was mandatory? . . .

118

ATTORNEY SPROTTE: We went and grabbed Karpouzis. We saw that you had no choice. . .

I had no argument with the Court's decision. I think the Court did what the Court was mandated to do, but as a team working together, we have resources. There are advantages in Territorial Court. They are advantages in the Federal Court.

. . .

Yes, I did go to my Federal counterpart. Yes, I did say, look, here is what happened today. What are we going to do. . .

. . .

[CHIEF JUDGE HODGE]: . . . Now, you can't wait till now, you figure something is happening in Territorial Court that you don't like, and then you back up and say, gentlemen, we need to meet. Something is going wrong now. We got to change strategy guys, in mid court.

ATTORNEY SPROTTE: Isn't that the nature of competition?

[CHIEF JUDGE HODGE]: No, but . . . this is not a matter of economics. This is a matter of constitutional right, people's freedom, people's liberty. These are fundamental rights of the human being. These guys are still in jail. This is not a game. It is not an economic game.

*Transcript of Hearing on Defendant's Motion to Dismiss with Prejudice, dated April 16, 1998, pp. 24-29, Government of the V.I. v. Gustavo Diaz, Criminal Nos. F60/98 & F77/98.*

Moreover, the presumption of vindictiveness "will lie in the pretrial setting if the defendant presents facts sufficient to show a realistic likelihood of vindictiveness." *United States v. Meyer*, 810 F.2d 1242, 1246 (D.C. Cir. 1987). In this case, the chronology of events constitute an overabundance of facts that demonstrate a realistic likelihood of vindictiveness. After the Court's hearing on February 18, 1998, and in the face of the Territorial Court's clear indication that Defendant's bail would be reduced and that they

would be released on conditions, the prosecution boasts and bets that the defendants will not be released, and proceeds to scheme with the Assistant U.S. Attorney to develop a plan to circumvent the impending Order of Release. In execution of that plan, the U.S. Attorney filed in the District Court of the Virgin Islands, a Probable Cause Affidavit subscribed and sworn to on February 20, 1998, by Richard Velasquez, the same affiant in the Territorial Court, which was the same in all material respects as the Velasquez Fourth Affidavit filed in the Territorial Court on February 18, 1998. Based on that affidavit, a complaint and an arrest warrant was obtained against each of the four defendants. *See, e.g., Criminal Complaint in United States of America v. Gustavo Diaz*, Dist. Ct. Mag. No. 98-23 (B), dated February 20, 1998; *Warrant for Arrest in United States of America v. Gustavo Diaz*, Dist. Ct. Mag. No. 98-23 (B), dated February 20, 1998. In obtaining the Warrant for Arrest, the U.S. Attorney requested detention, and the magistrate complied. The United States Marshal then filed with the Territorial Bureau of Corrections, where the defendants were pending release, a federal detainer against the four defendants. Thus, even after Defendant Diaz posted the $5,000.00 cash bail on February 20, 1998, he was retained in custody based on the federal detainer.

Indeed, until the Territorial Court stated that it would release the defendants, there were absolutely no papers or proceedings filed in the District Court. For 21 days—from January 29, 1998, the day of arrest, to February 19, 1998—the U.S. Attorney did not file charges in the District Court, instead, the Assistant Attorney General filed multiple pleadings in the Territorial Court, and caused the defendants to make multiple appearances in the Territorial Court. On the 22nd day, after the defendants were due to be released, a federal complaint, using the same Affidavit as in Territorial Court, alleging the federal equivalents of the Territorial offenses, was filed in the District Court. The foregoing establishes without a doubt that the Assistant Attorney General, in tandem with the Assistant U.S. Attorney, acted vindictively.

2. Remedy for Prosecutorial Vindictiveness

Where, as here, the prosecution acts vindictively, the Court may act decisively and dismiss with prejudice the charges against the defendants. See United States v. Meyer, 810 F.2d at 1249 (the

district's courts decision to dismiss the information due to prosecutorial vindictiveness does not constitute an abuse of discretion, given the trial court?s appropriately broad authority to remedy prosecutorial vindictiveness).

Moreover, although the Government is willing to stipulate to a dismissal, without prejudice, it is well within the Court's authority to dismiss the action with prejudice where the Government is found to have acted in bad faith. In *Government of the Virgin Islands ex rel. Robinson v. Schneider*, 893 F.Supp. 490 (D.V.I. 1995), the Court made clear its authority to dismiss a case with prejudice notwithstanding the prosecutor's request that the case be dismissed without prejudice. In *Robinson*, the defendant was tried in the District Court for murder in the first degree. After trial, the jury acquitted Robinson of first degree murder and second degree murder, but convicted him of voluntary manslaughter. Robinson appealed his manslaughter conviction, and the United States Court of Appeals for the Third Circuit reversed the conviction and remanded the case to the District Court for retrial on the voluntary manslaughter charge.

Sixty-two days after the Third Circuit issued its mandate, the Government moved to dismiss the case against Robinson under Rule 48(a) of the Federal Rules of Criminal Procedure. The District Court granted the motion, and dismissed, without prejudice, the Indictment against Robinson on September 22, 1994. Two months later, the Government filed an Information against Robinson in the Territorial Court charging him with Murder in the First Degree. Robinson filed a habeas corpus petition in the District Court contending that the Information filed in the Territorial Court violated the Double Jeopardy Clause of the Fifth Amendment, Rule 48(a), and the Speedy Trial Plan of the District Court. While the habeas petition was pending, the Government amended its Information in Territorial Court to charge Robinson with voluntary manslaughter, and not first degree murder. The Territorial Court also denied Robinson's motion to dismiss the voluntary manslaughter charge and ruled that the Government could try him in Territorial Court on that charge.

The District Court held that the reprosecution of Robinson in the Territorial Court violated the District Court's Speedy Trial Plan. In

121

telling words, the District Court announced that "the government may not pass the defendant to the left arm when the right arm is about to be shackled". The District Court found that the prosecutor acted in bad faith and amended its September 22, 1994 order and dismissed the Information with prejudice, *nunc pro tunc*.

Here, the Government's actions egregiously violated the defendants constitutional and statutory rights. The Government acted to deny the defendants their rights to be released and to circumvent the Territorial Court's order and jurisdiction. It passed "the defendants to the left arm when the right arm was about to be shackled", and the Court finds that such conduct warrants the sanction of dismissal, with prejudice, as to all defendants.

## CONCLUSION

■ It is clear that the prosecution not only opposed the defendants' release, but actively schemed·to violate their right to bail, with full knowledge that the territorial judge's bail order was mandatory under the law and the constitution. In addition to making bets that concerned the defendants' release, the prosecution implemented its scheme, with the aid of the U. S. Attorney's Office, and thwarted the release of the defendants as ordered by the Territorial Court. Thus, this Court concludes that the prosecution acted vindictively in violation of defendants' constitutional rights to due process, and that such vindictiveness can only be remedied by dismissal with prejudice.

Accordingly, for the reasons stated herein, the cases filed against the Defendants Gustavo Diaz, Claudio Coto, Luis Fernando Llona, and Jorge Gonzalez will be dismissed with prejudice.